483 F.2d 824
 32 A.L.R.Fed. 83, Fed. Sec. L. Rep. P 94,037
 Richard D. GREENFIELD and Samuel Moshinsky, on behalf of
themselves and all others similarly situated
v.
VILLAGER INDUSTRIES, INC., et al., Appeal of duPONT GLORE
FORGAN INCORPORATED, one of the class of
plaintiffs above-named, in No. 72-1998.
Appeal of BURNHAM & COMPANY, Inc., an interested party and
applicant in its own behalf and in behalf of its
customers and accounts, in No. 72-1999.
 Nos. 72-1998, 72-1999.
 United States Court of Appeals,
Third Circuit.
 Argued April 23, 1973.
Decided June 21, 1973.
Rehearing Denied July 27, 1973.
 
 Charles M. Solomon, Fox, Rothschild, O'Brien & Frankel, Philadelphia, Pa., and Charles H. Miller, New York City, for appellants.
 Aaron M. Fine, Philadelphia, Pa., for appellees.
 Charles H. Miller, Michael H. Graham, Marshall, Bratter, Greene, Allison & Tucker, New York City, for Burnham & Co., Inc.
 Before VAN DUSEN, ALDISERT and ROSENN, Circuit Judges.
 OPINION OF THE COURT
 ALDISERT, Circuit Judge.
 
 
 1
 This appeal presents the question whether the notice to prospective class members ordered by the district court was "the best notice practicable" under the class action rule 23(c)(2), F.R.Civ.P.
 
 
 2
 Appellants are registered owners of stock of Villager Industries, Inc., acquired during the years 1968 and 1969. Appellant Burnham is a New York investment banking and brokerage firm holding 22,972 shares of Villager common stock in street name for some 111 customers. Appellant du Pont is a brokerage corporation which, as a result of a recent merger with three other stock brokerage firms, holds 52,670 shares of Villager common stock in street names for 334 customers. Appellants were not formal parties to litigation brought by plaintiff-appellees, shareholders of Villager, against the defendant-appellees, Villager corporation and certain of its officers, directors and other shareholders. Burnham and du Pont present this appeal, contending that the district court failed to provide them with adequate notice of the hearing held on August 31, 1972, at which approval of a proposed settlement of the class action was obtained.
 
 
 3
 Plaintiffs instituted this action in federal district court, alleging that during the period January 1, 1968, to. December 31, 1969, defendants violated the federal securities laws in that they failed to disclose or misrepresented facts in prospectuses, registration statements, proxy materials, periodic reports, and releases filed with the Securities and Exchange Commission. Plaintiffs moved for a determination that the suit be maintained as a class action. However, not until nineteen months later, following settlement negotiations, did the district court order the suit to "proceed and be maintained as a class action" for settlement purposes only. The participating litigants also presented the district court with a proposed "notice to class members," the purpose of which was to inform absentee class members of the existence of the class action and the proposed settlement.[1]
 
 
 
 * * *Under the terms of the notice, "all persons who purchased shares of Villager during the period January 1, 1968, to December 31, 1969," would be deemed members of plaintiffs' class of stockholders. Membership in the class did not of itself guarantee participation in the settlement, however. In order to participate in the settlement fund, class members were required to file "a verified proof of claim with supporting documents." If such proof were not filed, or if shareholders did not exclude themselves, they were to be "barred from any future recovery on any claim." The district court ordered that notice of the hearing and proposed settlement be made "by publication . . . once a week during the weeks of June 19 and 26, 1972, in the national edition of the Wall Street Journal and in The Philadelphia Evening Bulletin in 1/8 of a page columns." Under the settlement plan, verified proofs or requests for exclusion were required to be filed by August 1, 1972.
 On August 31, 1972, the day appointed for the hearing, Burnham appeared in court, presenting a rule to show cause why the hearing should not be adjourned until September 29, 1972, to allow Burnham "to solicit its customers and accounts . . . in order to determine whether such customers and accounts desire to be included in the class" or "have any objections to the proposed settlement," and to permit Burnham "for itself and the various customers and accounts on whose behalf it holds or held shares . . . to file verified proofs of claim and/or requests for exclusion from the class." du Pont also appeared and moved that the "period for filing verified proofs of claim be extended to September 30, 1972." The district court denied both requests and entered an order on August 31, 1972, approving the settlement.[2]
 Both appellants filed timely notices of appeal. Additionally within the appeal period, du Pont unsuccessfully moved before the district court for a stay of the August 31, 1972, order pending appeal to this court. The settlement agreement as approved by the district court provided, in part:
 
 
 [11]
 Settlement shall not become effective, nor be consummated, until a final order has been entered pursuant to paragraph 9 hereof and until the time to appeal from such order has expired and no appeal has been taken therefrom, or if an appeal is taken until such order is finally affirmed on appeal, or the appeal is finally dismissed
 Subsequent to the filing of these appeals, and notwithstanding the above provision, on October 4, 1972, the district court ordered distribution.
 I.
 We swiftly dispose of appellees' contention that appellants lack standing. Appellants are record holders of the stock. They are at least nominally the legal, if not the equitable, owners of the shares. They were properly the objects of the public notice because they are "persons who purchased shares of Villager during the period January 1, 1968, to December 1, 1969." They appeared at the hearing and presented motions which were denied. They are complaining about exclusion from a class because of improper notice. They are not attempting on this appeal to object to the settlement. As record or legal shareholders they have standing on behalf of the equitable owners of the shares, asserting a wrongful denial of the opportunity to participate in the class action. See Zients v. LaMorte, 459 F.2d 628 (2d Cir. 1972); Sertic v. Carpenters District Council of the United Brotherhood of Carpenters and Joiners of America, 459 F.2d 579 (6th Cir. 1972); Ace Heating & Plumbing Co. v. Crane Co., 453 F.2d 30 (3d Cir. 1971); Cohen v. Young, 127 F.2d 721 (6th Cir. 1942).
 II.
 It was plaintiff-appellees who sought a determination that this litigation be maintained as a class action, pursuant to F.R.Civ.P. 23(c)(1),[3] and Rules 23(a) and 23(b)(3).[4] "Plaintiffs' Memorandum in Support of Application for Class Action Determination . . ." outlined a procedure for notification of class members ostensibly in compliance with Rule 23(c)(2). Rule 23(c)(2) provides that:
 In any class action maintained under subdivision (b)(3), the court shall direct to the members of the class the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort. The notice shall advise each member that (A) the court will exclude him from the class if he so requests by a specified date; (B) the judgment, whether favorable or not, will include all members who do not request exclusion; and (C) any member who does not request exclusion may, if he desires, enter an appearance through his counsel.
 Following recitation of the notice rule, Plaintiffs' Memorandum set forth what must be considered their interpretation of the "best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Plaintiffs' Memorandum asserted, "Defendant, Villager should be required to furnish whatever information it has from its stock transfer records or stockholder lists which would serve to identify class members. See Herbst v. Able, 47 F.R.D. 11 (S.D.N.Y.1969). Cf., Contract Buyers League v. F & F Investment, 48 F. R.D. 7 (N.D.Ill.1969). Those who cannot readily be identified for the purpose of receiving individual notice, can be notified by publication. Herbst v. Able, supra, as modified in 49 F.R.D. 286 (S. D.N.Y.1970)."
 But the deed did not match the promise. Notwithstanding plaintiffs' expressed intention to send individual notices to those who could be "readily identified" from Villager's "stock transfer records or stockholder lists," this was not done. There was but one type of notice: publication in one-eighth page columns in the Wall Street Journal and The Philadelphia Evening Bulletin on two days, June 23 and 30, 1972. This was insufficient notice under any standard of fairness, justice, or due process; it flew in the face of the specific terms of "the best notice practicable" rule; it contravened plaintiffs' stated representation to use individual notice insofar as possible; and it constituted such a defect to the proceedings in the district court that we will not only reverse the district court's orders relating to appellants' requests for extension of time, but we will also vacate the order approving the class action settlement and all orders implementing the settlement.
 A.
 Because a class action, "so instinct with benefits, is also wrought with mischievous effects,"[5] it is imperative that participating litigants and the court never lose sight of the laudatory fundamental purposes of this procedural device. Its historical purpose was to alleviate the burden on the court and its facilities in cases where a claim was common to a large number of persons. The practice originated in the English Court of Chancery and was assimilated into our judicial system at an early date, largely, it is said, because of the endorsement given it by Justice Storey in his Commentaries. From the equity side of the court, where the doctrines of res judicata are less than clearly defined, class actions gradually found recognition on the law side. Its use in claims for damages is justified where the public policy considerations of efficient court administration outweigh the potential prejudice to persons in interest who are not parties to the proceedings, but who may nevertheless become legally bound by an adjudication as if they were in fact parties litigant.[6]
 Also influencing the general acceptance of class actions has been recognition of the fact that the collective or accumulative technique of this device makes possible an effective assertion of many claims which otherwise would not be enforced, for economic or practical reasons, were it not for the joinder procedure. The 1966 amendments to Rule 23 are a restatement and reinforcement of public policy, mutually expressed by the Judicial Conference of the United States, its advisory committee on Rules of Civil Procedure, the Supreme Court, and the Congress, which candidly facilitate and encourage the use of class actions. For example, except as otherwise ordered by the court,[7] every potential member of a class is considered to be a member unless he affirmatively seeks exclusion. Rule 23(c)(3).
 A procedure such as the class action, which has a formidable, if not irretrievable, effect on substantive rights, can comport with constitutional standards of due process only if there is a maximum opportunity for notice to the absentee class member, i. e., "[T]he best notice practicable under the circumstances including individual notice. . . ."
 Given that class action procedures are conceptualized as an exception to the general rule that only parties to a lawsuit are legally bound by a final judgment, and that interested parties normally have a real voice in the strategy and management of the litigation, the procedure can be tolerated, if not completely justified,[8] only if there is fealty to both the spirit and the letter of the procedural rules, especially those relating to notice. Responsibility for compliance is placed primarily upon the active participants in the lawsuit, especially upon counsel for the class, for, in addition to the normal obligations of an officer of the court, and as counsel to parties to the litigation, class action counsel possess, in a very real sense, fiduciary obligations to those not before the court.[9] The ultimate responsibility of course is committed to the district court in whom, as the guardian of the rights of the absentees, is vested broad administrative, as well as adjudicative, power.
 Not the least important of the fiduciary duties shared by counsel and the court is their duty to ensure that absentee class members have knowledge of proceedings in which a final judgment may directly affect their interests. "An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 314, 70 S.Ct. 652, 657, 94 L.Ed. 865 (1950). In Mullane the Court held that notice by publication failed to satisfy due process requirements since ". . . it is not reasonably calculated to reach those who could be informed by other means at hand." 339 U.S. at 319, 70 S.Ct. at 660. "[W]hen notice is a person's due, process which is a mere gesture is not due process. The means employed must be such as one desirous of actually informing the absentee might reasonably adopt to accomplish it." 339 U.S. at 315, 70 S.Ct. at 657. Where names and addresses of members of the class are easily ascertainable, requirements of due process would dictate that the "best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort," Rule 23(c)(2), would be individual notice. See, e.g., Armstrong v. Manzo, 380 U.S. 545, 85 S.Ct. 1187, 14 L.Ed. 2d 62 (1965); Schroeder v. City of New York, 371 U.S. 208, 83 S.Ct. 279, 9 L. Ed.2d 255 (1962); New York v. New York N. H. & H. R. Co., 344 U.S. 293, 73 S.Ct. 299, 97 L.Ed. 333 (1953). In a recent episode of the Second Circuit's continuing saga of Eisen v. Carlisle & Jacquelin, 370 F.2d 119 (2d Cir. 1966); 391 F.2d 555 (2d Cir. 1968); and 479 F.2d 1005 (2d Cir. 1973), it appeared that 2,250,000 members of a 6,000,000 member class could be identified easily. The court stated, "[A]ctual notice must be given to those whose identity could be ascertained with reasonable effort and that 'in this type of case' plaintiff must pay the expense of giving notice to these members of the class." Eisen v. Carlisle & Jacquelin, supra, 479 F.2d at 1009.
 B.
 Although the foregoing are principles of general application to class actions, other considerations prompt our strong disaffection for the extremely superficial compliance with these principles which characterizes this case. Although the rules call for the determination of the class action issue "[a]s soon as practicable after the commencement of an action brought as a class action," Rule 23(c), in this case some nineteen months intervened between the filing of the request for designation as a class action and its determination. While there is no impediment to determining class actions for the purpose of settlement only, Ace Heating & Plumbing Co., Inc. v. Crane Co., 453 F.2d 30 (3d Cir. 1971), here the delay accentuated the necessity for adequate notice.[10]
 Moreover, the purpose of this notice was to afford a threefold opportunity to absentee class members: (1) to file a claim; (2) to state a desire for exclusion or (3) to object to the settlement. Each of these alternatives is important. Here the claimants were to share in a distribution of stock; the fewer the claimants, the more each would receive.[11] Unlike many class actions, and, indeed, unlike the general inclusion provisions of Rule 23(c)(3), here the individual participants were required to perform the affirmative act of filing a verified proof of claim by August 1, 1970. This date was within a month of the last publication date. Thus, an uninformed claimant paid a price for non-action.
 It is not unusual for objections to be presented at a hearing on a proposed settlement of a class action,[12] and it is elemental that an objector at such a hearing is entitled to an opportunity to develop a record in support of his contentions by means of cross examination and argument to the court. Cohen v. Young, supra, 127 f.2d at 724. See also Schwartzman v. Tenneco Manufacturing Co., 375 F.2d 123 (3d Cir. 1967). Whether the proposed compromise is submitted to the court before or after class action status has been obtained, the court is obliged to determine whether the settlement has been influenced by fraud or collusion and whether it is fair, adequate and reasonable.[13]
 Furthermore, we are not unaware that at best the publication procedure utilized was scanty: publication in two newspapers on two occasions seven days apart during the East Coast summer vacation period. Thus, assuming that all possible claimants normally read the Wall Street Journal and The Philadelphia Evening Bulletin-and this is a generous assumption-an absence from home or work during this period, or any departure from normal habits during this critical seven-day period, would have lessened the probability of the claimant's receiving notice. Appellees contend that since appellants are stockbrokers they should be held to know the contents of the Wall Street Journal. Although we can agree that there is a reasonable probability that appellants' personnel read this publication regularly, this argument misses the point. The issue raised by appellants affects the notice to all potential members of the class, not only the appellants. In our view, the vice of inadequate notice makes it impossible for any court to determine whether an interested and uninformed absentee would have raised an objection to the settlement, elected to file a verified proof of claim, or opted for exclusion.[14]
 This, too, must be said. We have a serious problem with the limited period of time in which the shareholders were permitted to file proofs of claim or requests for exclusion. As the Supreme Court has recognized, the opportunity to be heard, a fundamental requisite of due process, is of "little reality or worth unless one is informed that the matter is pending and can choose for himself whether to appear or default, acquiesce or contest." Mullane v. Central Hanover Bank & Trust Co., supra, 339 U.S. at 314, 70 S.Ct. at 657. It is clear therefore that the notice procedures utilized in class actions are of constitutional significance and must themselves be viewed in due process terms. As a consequence, just as a hearing which does not afford a meaningful opportunity to be heard may be as fatal to due process as a denial of any hearing at all, so too constitutionally mandated notice which is inadequate under the circumstances may be as fatal to due process as no notice at all. Moreover, pro forma gestures will not suffice. The notice must not only convey the required information, but, synthesizing from the Supreme Court's own language, it must also "afford a reasonable time for those interested to choose whether to appear or default, acquiesce or contest." Mullane v. Central Hanover Bank & Trust Co., supra, 339 U.S. at 314, 70 S.Ct. at 657. Appellants present a reasonable argument that the thirty-day period was insufficient for those members of the class who had left their stock in street names with their stockbrokers. A one-month period hardly seems sufficient time for brokerage firms to search their records, notify customers, probably by mail, for whom they held shares in street name, received instructions from these customers, again probably by mail, and file the proofs of claim or requests for exclusion.
 III.
 Finally, appellees contend that the issue is moot because the settlement has been approved and the stock distributed. Additionally, they contend appellants are foreclosed from prosecuting this appeal because they failed to obtain a stay of the district court's order by this court. This contention borders on the frivolous. We were told at oral argument by appellants that had their motion for a stay been granted by this court, appellees had indicated to them that they would have asked this court to set a bond of eleven million dollars.
 That the stock has been distributed in accordance with the district court's order is immaterial. The distribution of that stock, pursuant to the settlement agreement, made at a time when these appeals were underway, was in direct contravention of paragraph 11 of the settlement agreement which states that the settlement would not "become effective, nor be consummated . . . if an appeal is taken until such [settlement] order is finally affirmed on appeal, or the appeal is finally dismissed." With full knowledge of the pendency of these appeals, and presumptively with knowledge of the affect of the appeals as a bar to consummation of the settlement agreement which appellees participated in negotiating, appellees, jointly or severally, persuaded the district court to order distribution. Both appellees took this step with full cognizance of the risk involved.
 The matter is not moot. We hold that because the notice was fatally defective, all subsequent proceedings pertaining to the settlement are devoid of validity and all settlement orders issued pursuant to those proceedings will therefore be vacated.
 The judgment of the district court will be reversed and the proceedings remanded for further proceedings not inconsistent with this opinion.
 SUR PETITION FOR REHEARING
 Present SEITZ, Chief Judge, and VAN DUSEN, ALDISERT, ADAMS, GIBBONS, ROSENN, JAMES HUNTER, III and WEIS, Circuit Judges.
 BY THE COURT.
 The petition for rehearing filed by Plaintiffs-Appellees in the above entitled case having been submitted to the judges who participated in the decision of this court and to all the other available circuit judges of the circuit in regular active service, and no judge who concurred in the decision having asked for rehearing, and a majority of the circuit judges of the circuit in regular active service not having voted for rehearing by the court in banc, the petition for rehearing is denied.
 ADAMS, Circuit Judge, dissents.
 ADAMS, Circuit Judge (dissenting Sur Denial of Petition for Rehearing).
 I respectfully dissent from the order denying rehearing in this case, because I believe that the petition presents a serious question regarding "notice" in connection with proposed settlements of class actions. Also, it addresses important problems relating to standing and the nature of relief when notice is deemed by an appellate court to be inadequate.
 The settlement here was reached by the named plaintiffs and Villager. It provided that 660,000 shares of Villager stock was to be made available for distribution to those who had purchased Villager stock in 1968 and 1969, the period during which fraudulent statements regarding the company were allegedly made.
 Plaintiffs had sought to have the matter declared a class action under Rule 23(c) on November 13, 1970, an early stage of the litigation, but the district court deferred making the necessary determination. When the proposed settlement developed, the plaintiffs again requested the district court to declare the matter a class action. Although in their petition for class determination plaintiffs had offered to send individual notices, predicated on an appropriate list being prepared and submitted by Villager, the district court entered an order on June 7, 1972, providing that notice by publication would be sufficient under Rule 23(c)(2). Also, the class was to consist of "purchasers" during 1968 and 1969. Publication appeared on June 23 and June 30, 1972, in both the Philadelphia Evening Bulletin and Wall Street Journal. It provided for a cut-off date of August 1st for the filing of all claims or the filing of an election to be excluded from the class, or for filing objection to the settlement; and for a hearing on August 31, 1972, to determine whether the settlement was fair and reasonable and should be approved. The August 1st deadline was later extended to August 23, 1972.
 On august 31, 1972, Burnham & Co. and duPont Glore Forgan, two large and widely-known brokerage firms, presented a rule to adjourn the hearing in order to permit additional time to solicit and file claims on behalf of individual customers of these firms who may have purchased Villager stock during 1968 and 1969, but kept such stock in street name. Specifically, Burnham and duPont sought extensions of time until the end of September, 1972, to file claims on behalf of their customers. At the hearing it was made clear that duPont and Burnham had learned of the proposed class settlement by the latter part of July. No explanation was given by them as to why they did not request an extension, at that time, before the deadline fixed by the court. They did explain that it would take a number of weeks to ascertain the names of their customers who may have bought Villager stock in 1968 and 1969. An affidavit filed by Burnham on August 31, 1972, stated that "because of an error in a computer run and because of the number of customers run and transactions involved" it had taken several weeks to obtain the information. duPont did not file an affidavit, but at the hearing on August 31, 1972, its counsel stated that there had been a delay caused because of recent mergers and the fact the material was in a warehouse.
 Claims representing 11,000,000 shares of Villager stock had apparently been filed by the deadline. Also, customers of Burnham had sent in a substantial number of verified claims within the time designated by the district judge.
 There was no suggestion at the hearing before the district court that the settlement had been influenced by fraud or collusion, that it was not fair, or that it was unreasonable. Indeed, on August 31, 1972, the day the district judge approved the settlement in open court, counsel for duPont and Burnham were present in the courtroom and did not object to the settlement.
 The notices of appeal filed by Burnham and duPont indicate that these companies were appealing primarily from the failure of the district court to extend the period of time for filing claims for their customers, or opting out of the settlement.
 After the appeals were filed, Burnham and duPont sought a stay of the distribution of the Villager stock. This was denied by the district court on October 4, 1972. Burnham and duPont did not apply to this Court for a stay of the distribution.
 Under the circumstances, there would seem to be considerable question whether Burnham and duPont have standing to assert claims regarding the nature of the notice of the class action settlement or regarding the order of the trial judge in refusing to grant additional time for filing notice of claims or for opting out. The real injury caused by the nature of the notice or the failure to extend the time, is suffered by their customers. And in any event, Burnham and duPont would not appear to have standing to complain on this appeal about the nature of the notice since the specific complaint pressed by them before the district court was not addressed to the nature of the notice (publication rather than individual notification) but to the district court's refusal to extend the time.
 More important though, at least for me, is the implication of the panel decision regarding notices in the future insofar as cases arising from stock transactions are concerned.[1] There is some danger that the opinion may be interpreted to mean that individual notice must always be required in such situations. Yet, whether there should be individual notices or whether notice by publication may be satisfactory should, in the absence of an abuse of discretion, be a matter for the district court. Notice to members of a class can involve many considerations, and the district court has the advantage of being on the scene and aware of all of the countervailing factors. Although a district judge might well have provided for wider publication, or a greater time period for filing claims or for opting out of the class, or even insisted on individual notices, the critical question is whether it is an abuse of discretion when the district judge does not do so. The record would not appear to support a conclusion that the district court here did, in fact, abuse his discretion.[2]
 Finally, I am troubled by the sweep of this Court's judgment, which vacates the entire settlement, even though no party has requested such drastic action, or even objected to the settlement as such. Restructuring a settlement involving a volatile stock, such as Villager, may be most difficult and even inequitable at this late date. Would it not be more appropriate, assuming it is determined that there are some purchasers of the stock within the two-year period who have not yet asserted claims, to remand this particular problem to the district court who, after hearing from counsel, might well permit such purchasers to recover on a pro rata or some other equitable basis if they now come forward and establish their claims? It is conceivable, I suppose, that there might be very few such stockholders. To strike down the entire settlement because of the possibility of a few such stockholders may be punitive for individual members of the class who in no way actively participated in formulating the notice or in deciding to proceed with the distribution. The matter might be more susceptible to a solution aimed at the specific problem, whether that problem is considered in terms of an additional 30 days to file claims or the lack of individual notice to purchasers of Villager stock during 1968 and 1969.
 The ordering of distribution by the district court before the appeal is somewhat troublesome. However, it may be that such step was taken by the district court on the premise that if there were a reversal on his ruling not to extend the period for filing by Burnham and du-Pont stockholders for approximately a month, the harm caused by the early distribution could be rectified by specific awards, such as suggested above, or by permitting such purchasers to assert their claims by separate suit. Admittedly, the record is not clear on the distribution point, but a hearing on remand would undoubtedly clarify it.
 For the foregoing reasons I believe the rehearing should be granted to permit a full exploration of the problems posed by the petition.
 
 
 [1]
 The notice as published in the Wall Street Journal and The Philadelphia Evening Bulletin provided:
 Pursuant to Rule 23 of the Federal Rules of Civil Procedure You Are Hereby Notified:
 There is pending in this court an action on behalf of purchasers during the period January 1, 1968, to December 1, 1969, of the common stock of Villager Industries, Inc., formerly known as The Villager, Inc. (hereinafter referred to as "Villager"), for damages to such purchasers for alleged violations by defendants of the federal securities laws. It is alleged in the complaint that defendants concealed or misrepresented facts relating to Villager's business in prospectuses, registration statements, proxy materials, periodic reports and releases filed with the Securities and Exchange Commission or the New York Stock Exchange, or distributed to the public, or otherwise, upon which such purchasers relied to their detriment. Defendants deny any of the alleged violations and also deny any liability whatsoever on account thereof, but are agreeable to a settlement of the action upon the terms and conditions described herein in order to avoid further litigation. For the purpose only of effectuating such settlement defendants have agreed to the establishment of a temporary class of claimants as defined herein (hereinafter referred to as the "class").
 
 
 [1]
 You may be a member of the class, and if so, your rights may be affected by this action and the settlement thereof. This notice, however, is not to be understood as an expression of any opinion by the Court as to the merits of any of the claims, defenses, counterclaims or cross-claims, which have been asserted by any party in this action, or as to any participation in the settlement to which any claimant may be entitled, but is given for the sole and exclusive purpose of informing you of the pendency of this action and of the proposed settlement described herein so that you may decide what steps, if any, you wish to take in relation thereto
 
 
 [5]
 Class Defined. The class of persons to whom the settlement is being offered includes all persons who purchased shares of Villager during the period January 1, 1968, to December 31, 1969, and suffered a loss. Excepted from the class are the named defendants. If you purchased shares during the period you will be deemed to be a member of the class unless you take steps provided for herein to exclude yourself
 
 
 [6]
 The Settlement. Defendants Norman Raab and Max L. Raab (the "Raabs") have agreed, subject to the approval of the Court, and for a full and final settlement of all claims of members of the class as to all defendants, to make available for distribution to those members who file verified proofs of claim with supporting documents, 660,000 shares of unregistered Villager common stock (hereinafter referred to as the "settlement fund"). The Raabs shall have the option to make 60,000 of said shares available on or before February 28, 1973, or in lieu thereof the sum of $240,000. In addition defendant Norman Raab has agreed to pay counsel fees to plaintiffs' attorneys as counsel for the class in the sum of $300,000 and to pay their out-of-pocket expenses not to exceed $7,500, and to pay the expenses of the settlement
 It is intended that the settlement fund be distributed as follows:
 (a) Each claimant who desires to participate in the distribution of the settlement fund shall file a verified proof of claim in the form appended hereto on or before June 30, 1972.
 (b) Each claimant whose claim is accepted shall, depending upon the size and number of the claims made and the further orders of the Court, be entitled to share in the settlement fund in accordance with the following formula: (1) each claimant shall be entitled to receive such share of the settlement fund as equals a fraction, the numerator of which is the recognized loss sustained by claimant, and the denominator of which is the aggregate recognized loss sustained by all claimants whose claims have been accepted, multiplied by the settlement fund; (2) recognized loss shall mean the excess of (a) the total cost of purchase of shares by claimant over (b) the amount realized upon any sales of shares during the period January 1, 1968, to December 31, 1969, and in the case of claimants who held shares on December 31, 1969, the recognized loss shall consist of the excess of (a) the cost of purchase of shares over (b) closing market price of the shares on the date, namely, 7 5/8.
 (c) No fractional shares shall be distributed to any claimant. None of the named defendants shall be entitled to participate in the distribution of the settlement fund.
 The foregoing formula may be modified by the Court in the interests of fairness to all claimants and no claimant shall be entitled to participate in the settlement fund to any greater extent than his actual recognized loss entitles him.
 If you are a member of the class, and neither exclude yourself nor file a verified proof of claim with supporting documents, you will be barred from any future recovery on any claims, and shall not receive notice of any further proceedings, hearing, or any other matter in connection with such claims, including the entry of a final order dismissing with prejudice any claims you may have as a member of the class.
 Under the settlement agreement no distribution will be made until (a) all of the conditions set forth in the settlement agreement have been satisfied, and (b) the Court has approved the settlement and the distribution to the claimants thereunder, and entered a final order of dismissal with prejudice against the plaintiffs and all other members of the defined class who have not timely excluded themselves, and such order shall have become final either by affirmance or expiration of the time for appeal.
 NOW THEREFORE, TAKE NOTICE:
 
 
 [1]
 The Court will exclude you from the class if you request exclusion in writing, on or before August 1, 1972. If you are a member of the class, and do not request to be excluded therefrom, you will be bound to look to the settlement fund only for relief as to any claims which you as a member of the class have against defendants, and will be deemed a party to this action to be included in and bound by any order rendered in connection with this settlement
 
 
 [2]
 If you are a member of the class who does not request to be excluded and you wish to participate in the distribution of the settlement fund, you must file, no later than August 1, 1972, a verified proof of claim in the form appended hereto together with your brokers' confirmations of purchase and sale or copies thereof supporting your claim, or you will be forever barred from recovery for any claim you may have against the defendants as a member of the class. Additional forms of proof of claim will be supplied upon written request to the undersigned
 
 
 [3]
 If you do not request exclusion, you may, if you so desire, enter an appearance through counsel of your own choosing. If you do not request exclusion, and you do not enter such an appearance your interests in this litigation will be represented by counsel for plaintiffs and the class
 
 
 [4]
 If you are a member of the class who does not request exclusion and who does not file a verified proof of claim, you shall not receive notice of any further proceedings, hearings, orders, or any other matters in connection with your claims, including the entry of final order dismissing with prejudice any claim you may have against the defendants, and you shall be bound by all said proceedings, hearing, orders or other matters
 
 
 [5]
 A hearing will be held on August 31, 1972, at 10:00 A.M. (D.S.T.) before the United States District Court for the Eastern District, in Court Room , United States Courthouse, 9th and Market Streets, Philadelphia, Pennsylvania, on approval of the settlement described herein, at which you may appear and be heard with respect to any of the matters set forth herein
 
 
 [6]
 At such hearing no member of the class who desires to object to the settlement will be heard and no papers submitted by or on behalf of any such member will be received or considered by the Court at or in connection with the hearing, except as the Court may in its discretion otherwise direct, unless such member desiring to be heard or to submit papers files with the Clerk on or before August 1, 1972, his objections in writing, together with all his papers to be submitted to the Court at the hearing
 
 
 [2]
 FINAL JUDGMENT
 AND NOW, this 31st day of August, 1972, after a hearing held on August 31, 1972, pursuant to due notice at which time the parties were heard by their respective counsel, and no persons having appeared in opposition to the proposed settlement, and the Court being fully advised, and the Court having in Settlement Order No. 3 approved the settlement proposed in Settlement Order No. 1 as fair, reasonable and adequate, the Court now enters a Final Judgment in accordance with the Federal Rules of Civil Procedure, as follows:
 
 
 [1]
 The complaint in this action be, and the same is hereby, dismissed with prejudice. This Final Judgment be, and the same hereby is, in full and final discharge of any and all claims and causes of action against any and all defendants, which have been or might have been asserted with respect to the matters alleged in the complaint
 
 
 [2]
 This Final Judgment includes and binds all the members of the class alleged in the complaint in this action, namely, all persons who purchased shares of Villager Industries, Inc., during the period January 1, 1968, to December 31, 1969, and who suffered a loss, except those persons who have requested exclusion
 
 
 [3]
 Any and all claims asserted by any parties in this action, whether as a counter-claim or cross-claim or otherwise be, and the same are hereby, also dismissed with prejudice
 
 
 [4]
 The settlement proposed in Settlement Order No. 1 shall be consummated in accordance with the Agreement of Settlement and Settlement Order No. 3, and this Court shall retain jurisdiction in this action for the purpose of supervising the consummation of the settlement
 
 
 [3]
 As soon as practicable after the commencement of an action brought as a class action, the court shall determine by order whether it is to be so maintained. An order under this subdivision may be conditional, and may be altered or amended before the decision on the merits
 
 
 [4]
 Rule 23(a) provides:
 One or more members of a class may sue . . . as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims . . . of the representative parties are typical of the claims . . . of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.
 Rule 23(b)(3) provides:
 An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition:
 (3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.
 
 
 [5]
 Morris v. Burchard, 51 F.R.D. 530, 536 (S.D.N.Y.1971)
 
 
 [6]
 The original class action Rule 23, promulgated in 1937, was a restatement and clarification of Rule 38 of the Equity Rules for Federal Courts (1912)
 Absent adequate notice, the rights of many could be at the mercy of a very few. Experience has shown that by comparison to the size of the class, relatively few class members actively participate in the management of the litigation.
 
 
 [7]
 In the case at bar, prospective class members were required to perform the affirmative of filing a verified claim
 
 
 [8]
 We are not unmindful that after seven years' experience with the 1966 amendments, thoughtful criticisms of the class action device under Rule 23(b), (c) are now emerging with increasing frequency from distinguished members of the federal judiciary who have had vast experience in this field. See Eisen v. Carlisle & Jacquelin, 479 F.2d 1005, 1018-1020 (2d Cir. 1973), "Class actions have sprawled and multiplied like the leaves of the green bay tree." Friendly, Federal Jurisdiction: A General View, Columbia University Press, at 120, "Something seems to have gone radically wrong with a well intentioned effort."
 
 
 [9]
 Experience teaches that it is counsel for the class representative and not the named parties, who direct and manage these actions. Every experienced federal judge knows that any statements to the contrary is sheer sophistry
 
 
 [10]
 For dangers associated with class action settlements, see, McGough and Lerach, Termination of Class Actions: The Judicial Role, 33 U.Pitt.L.Rev. 445 (1972)
 
 
 [11]
 See note 1, supra, p 6(b), description of the settlement
 
 
 [12]
 See cases, McGough and Lerach, Ibid., at 463, n. 74
 
 
 [13]
 Zerkle v. Cleveland-Cliffs Iron Co., 52 F.R.D. 151 (S.D.N.Y.1971); Percodani v. Riker-Maxson Corp., 50 F.R.D. 473 (S.D.N.Y.1970); Norman v. McKee, 290 F.Supp. 29 (N.D.Cal.1968), aff'd, 431 F. 2d 769 (9th Cir. 1970); Roman v. Master Industries, Inc., CCH Fed.Sec.L.Rep. [1966-67 Transfer Binder] p91,806 (S.D. N.Y.1966); Neuwirth v. Allen, CCH Fed. Sec.L.Rep. [1961-64 Transfer Binder] p 91,324 (S.D.N.Y.), aff'd, 338 F.2d 2 (2d Cir. 1964)
 
 
 [14]
 For a complete exposition of the notice requirements of Rule 23 and related issues, see generally Symposium, Federal Rule 23-The Class Action, 10 B.C.Ind. & Com.L.Rev. 497 (1969). See especially Ward & Elliott, The Contents and Mechanics of Rule 23 Notice, 10 B.C.Ind. & Com.L.R.ev. 557 (1969)
 
 
 [1]
 See Eisen v. Carlisle & Jacquelin, 1002 F.2d 479 (2d Cir. filed May 1, 1973), rehearing denied, May 24, 1973
 
 
 [2]
 Since, at the hearing on August 31, 1972, Burnham and duPont requested only an extension of time to file claims or elections, and did not at that time ask for a new notice procedure to include individual notices, the charge of abuse of discretion by the district court should be addressed to the district court's order denying the extension of time