Mitchell A. KRAMER and David
C. Harrison

v.

SCIENTIFIC CONTROL CORP. et al.

Appeal of ARTHUR ANDERSEN & CO.

Nos. 75–1673, 75–1849.

United States Court of Appeals,
Third Circuit.

Argued Feb. 11, 1976.

Decided April 20, 1976.

Oliver C. Biddle, Richard Z. Freemann, Jr., Philadelphia, Pa., Charles W. Boand, Chicago, Ill., for appellant; Ballard, Spahr, Andrews & Ingersoll, Philadelphia, Pa., Wilson & McIlvaine, Chicago, Ill., of counsel.

Steven Kapustin, Kramer & Salus, Philadelphia, Pa., for appellees.

Before ALDISERT, GIBBONS and ROSENN, Circuit Judges.

## OPINION OF THE COURT

ALDISERT, Circuit Judge.

May a member of the bar who is a plaintiff class representative in a class action proceeding under Rule 23(b)(3) of the Federal Rules of Civil Procedure designate as his counsel a member or employee of his law firm? This is the question presented in the appeal at No. 75–1849 from an order denying appellant's motion to disqualify plaintiffs' counsel. Also raised, at No. 75–1673, is the issue whether the district court erred in certifying the class. F.R.Civ.P.

23(a), (c). We answer the first question in the negative; we do not reach the second, for want of an appealable order.

Mitchell A. Kramer and David C. Harrison, then law partners, purchased as joint tenants 50 shares of Scientific Control Corp. stock on January 6, 1969. They sold the stock one month later at a net loss of $438.13. During the summer of 1971, after Kramer and Harrison had dissolved their partnership, Kramer received a four-page questionnaire from the Securities and Exchange Commission requesting information on the transaction in Scientific Control stock. Kramer did not answer the SEC inquiry. Instead, after communicating with Harrison and receiving his permission, Kramer filed suit,[1] naming himself and Harrison as plaintiffs. The complaint named as defendants Scientific Control Corp. and certain officers and directors; H. L. Federman & Co., an underwriting firm; and Arthur Andersen & Co., the certified public accounting firm and appellant herein. Robert M. Britton, then an associate in Kramer's office, signed the complaint. Britton later moved to dismiss as to several named defendants, to add several defendants, and to amend the complaint; still later, he moved for a class action determination. Shortly before Britton left the employ of Kramer in July 1972, he withdrew as counsel and Steven Kapustin, then replacing Britton as an associate but now a partner of Kramer, entered his appearance.

On October 1, 1974, the district court granted plaintiffs' deferred motion for a determination that the action proceed as a Rule 23(b)(3) class action. 64 F.R.D. 558 (E.D.Pa.1974). On April 17, 1975, the district court denied a motion for reconsideration of its class action certification or, in the alternative, for a certification pursuant to 28 U.S.C. § 1292(b). 67 F.R.D. 98 (E.D.Pa. 1975). The appeal at No. 75–1673 followed; appellees have moved to dismiss this appeal for want of jurisdiction.

Two months later, on June 20, 1975, appellant moved the district court, *inter alia*, to disqualify plaintiffs' counsel because "[t]here exists an irreconcilable conflict of interest between the representation by Kramer & Salus [the firm in which Kapustin is now a partner] of the named plaintiffs and the members of the class purported to be represented by the named plaintiffs; 2. The Code of Professional Responsibility bars such representation . . . ." Appendix at 272a. The district court, treating the motion as one for reargument or reconsideration of its April 17th order and, as such, untimely, denied the motion. *Ibid.* at 277a. Appellant then noticed the appeal at No. 75–1849.

### I.

As we recently stated: "[T]his court has taken a strong position that a class certification decision, per se, is not an appealable final order under 28 U.S.C. § 1291. *Hackett v. General Host Corp.*, 455 F.2d 618 (3d Cir.), *cert. denied*, 407 U.S. 925, 92 S.Ct. 2460, 32 L.Ed.2d 812 (1972). To qualify for interlocutory review in this circuit a class certification decision must be attended by special factors which take it outside the ambit of the general rule. *Katz v. Carte Blanche Corp.*, 496 F.2d 747, 756 (3d Cir.) (in banc), *cert. denied*, 419 U.S. 885, 95 S.Ct. 152, 42 L.Ed.2d 125 (1974)." *Ungar v. Dunkin' Donuts of America, Inc.*, 531 F.2d 1211, 1213 (3d Cir. 1976). We will review class action certification decisions if the parties satisfy two conditions precedent, neither of which may be expected absent special circumstances—an order by the district court judge and permission from this court. 28 U.S.C. § 1292(b). *See generally* Note, *Interlocutory Appeals in the Federal Courts Under 28 U.S.C. § 1292(b)*, 88 Harv. L.Rev. 607 (1975). Here, appellant met neither of the conditions. Accordingly, we will grant appellees' motion to dismiss the appeal at No. 75–1673.

---

1. The complaint as amended alleged claims under the Securities Act of 1933, the Securities Exchange Act of 1934, and the regulations thereunder, as well as common law claims

predicated on pendent jurisdiction. *See Kramer v. Scientific Control Corp.*, 365 F.Supp. 780 (E.D.Pa.1973) (district court opinion denying motions to dismiss).

■■ The appeal at No. 75–1849 stands on a different footing. Where a serious question of impropriety arises in the context of a motion to disqualify an attorney from proceeding to trial, this court has invoked the collateral rule of *Cohen v. Beneficial Industrial Loan Corp.,* 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949). Accordingly, we have held that district court orders denying such motions may be appealable under 28 U.S.C. § 1291. *Kroungold v. Triester,* 521 F.2d 763, 765 (3d Cir. 1975); *American Roller Co. v. Budinger,* 513 F.2d 982, 983 (3d Cir. 1975); *Greene v. Singer Co.,* 509 F.2d 750 (3d Cir. 1971) (sur. motion to dismiss appeal).[2] We believe that the questions presented in the appeal at No. 75–1849 are " 'too important to be denied review and too independent of the cause itself to require that appellate consideration be deferred' ". *Ibid.* at 751. We hold, therefore, that the order denying the motion to disqualify plaintiffs' counsel qualifies for immediate review.

II.

Having established our appellate jurisdiction to review the denial of the motion to disqualify, we now properly turn to the question of the scope of our appellate review. It has been said that a district court's decision to grant or deny such a motion may be reversed only for an abuse of discretion. *See Kroungold v. Triester, supra,* 521 F.2d at 765 & n.2. Recently, however, we observed that in many contexts disqualification motions present purely legal issues, subject to full appellate re-

view. *American Roller Co. v. Budinger, supra,* 513 F.2d at 985 n.3. Once again, this possible discrepancy need not detain us here. As previously rehearsed, page 1087 *supra,* in this case the district court treated the motion to disqualify counsel as a motion to reconsider the class action certification decision. The issue on certifying plaintiffs as class representatives—whether they would "fairly and adequately protect the interests of the class", F.R.Civ.P. 23(a)(4), when their counsel was an employee (and later a partner) in Kramer's firm—was related, but not identical, to the issue posed by the disqualification motion. Reducing the distinction to its bare essentials, the former issue relates to who may serve as class representative, while the latter relates to who may serve as counsel. The trial court failed to perceive the difference and consequently erred.

III.

We take as our starting point Lord Herschell's remark to Sir George Jessel: "[I]mportant as it was that people should get justice, it was even more important that they should be made to feel and see that they were getting it." [3] From this has emerged what may be described as an axiomatic norm, if not a legal doctrine or conception,[4] *viz.,* that the appearance of conduct associated with institutions of the law be as important as the conduct itself. Indeed, this notion is at least an implicit predicate of the Code of Professional Responsibility,[5] drafted by the American Bar Association and implemented by the courts, in-

---

2. We do not hold that every ruling relating to conflict of interest by an attorney should activate the *Cohen* rule.[3]

3 "Every interlocutory order involves, to some degree, a potential loss. That risk, however, must be balanced against the need for efficient federal judicial administration as evidenced by the Congressional prohibition of piecemeal appellate litigation. To accept [a contrary] view is to invite the inundation of appellate dockets with what have heretofore been regarded as nonappealable matters." *Borden Co. v. Sylk,* 410 F.2d 843, 846 (3d Cir. 1969).

*Greene v. Singer Co., supra,* 509 F.2d at 751.

3. 2 J. B. Atlay, Victorian Chancellors 460 (1908).

4. *See* Pound, *Hierarchy of Sources and Forms in Different Systems of Law,* 7 Tul.L.Rev. 475, 484–85 (1933).

5. The Preamble to the Code of Professional Responsibility states in part: "[I]n the last analysis it is the desire for the respect and confidence of the members of his profession and of the society which he serves that should provide to a lawyer the incentive for the highest possible degree of ethical conduct. The possible loss of that respect and confidence is the ultimate sanction."

The Code of Judicial Conduct—which the ABA adopted in 1972 and which the Judicial Conference of the United States promulgated at its April 1973 meeting to govern the conduct

cluding the United States District Court for the Eastern District of Pennsylvania,[6] to govern behavior of attorneys. The importance of this notion cannot be gainsaid. Canon 9 of the Code of Professional Responsibility, which Local Rule 11 in the district court made applicable to counsel, declares: "[A] lawyer should avoid even the appearance of professional impropriety." Canon 9 is case law in this court: "[A] court may disqualify an attorney for not only acting improperly but also for failing to avoid the appearance of impropriety." *Richardson v. Hamilton International Corp.,* 469 F.2d 1382, 1385–86 & n.12 (3d Cir. 1972), *cert. denied,* 411 U.S. 986, 93 S.Ct. 2271, 36 L.Ed.2d 964 (1973).

These considerations form the backdrop to our approach in this appeal. Thus, we are not concerned with (a) factual determinations whether Kramer was the de facto attorney in these proceedings or whether it was variously Britton or Kapustin; or (b) the quality of the professional services rendered by counsel on behalf of the plaintiff class; or (c) the motivations of Kramer as a plaintiff, as a class representative, or as an attorney-employer or attorney-partner of the attorney who formally appeared for the plaintiffs. In the view we take, we may assume that Kramer is not and was never the attorney in fact, that the professional representation rendered variously by Britton and Kapustin is of the highest caliber, and that Kramer's interest in these proceedings is limited to his role as a named plaintiff and member of the class. With these assumptions we proceed.

## IV.

In the federal courts, the right of parties to "plead and conduct their own cases"[7] has been protected by statute since the beginning of our nation. *Faretta v. California,* 422 U.S. 806, 812, 95 S.Ct. 2525, 2530, 45 L.Ed.2d 562, 569 (1975). Indeed, in the criminal context, one has a constitutional right to represent himself. *Ibid.* at 836, 95 S.Ct. at 2541, 45 L.Ed.2d at 582. Thus, we take it as settled that any plaintiff *qua* plaintiff—including Kramer were he not also a class representative—may represent himself pro se.

Appellees do not appear to contest seriously that, in the circumstances of this case, it would have been improper for Kramer, the class representative, to designate himself as counsel for the class. In his deposition, Kramer stated that he would not accept any portion of a court-awarded attorneys' fee derived from this case "[b]ecause I thought that as a plaintiff in the purported class action case I could not benefit from the case other than as a member of the class, and could not benefit differently from other members of the class." App. at 77a. We agree.

The very nature of this litigation—a Rule 23(b)(3) class action for money damages—suggests the possibility that success, either by verdict and judgment or by settlement, would result also in a court-awarded attorneys' fee from the fund created for the benefit of the class. Federal courts have long recognized "the historic power of equity to permit the trustee of a fund or property, or a party preserving or recovering a fund for the benefit of others in addition to himself, to recover his costs, including his attorneys' fees, from the fund or property itself or directly from the other parties enjoying the benefit." *Alyeska Pipeline Service Co. v. Wilderness Society,* 421 U.S. 240, 257, 95 S.Ct. 1612, 1621, 44 L.Ed.2d 141, 153 (1975); *see, e. g., Sprague v. Ticonic National Bank,* 307 U.S. 161, 59 S.Ct. 777, 83 L.Ed. 1184 (1939). *See generally* 7A C.

of federal judges—is to similar effect. Canon 2 of the judicial conduct code states: "A judge should avoid impropriety and the appearance of impropriety in all his activities." The Commentary elaborates: "Public confidence in the judiciary is eroded by irresponsible or improper conduct by judges. . . . [A judge] must therefore accept restrictions on his conduct that might be viewed as burdensome by the ordinary citizen and should do so freely and willingly." 69 F.R.D. 273, 274 (1976).

6. Local Rule 11 provides that the ABA's ethical guidelines "shall become standards of conduct for attorneys of this Court." *See Kroungold v. Triester, supra,* 521 F.2d at 765 n.3.

7. 28 U.S.C. § 1654.

Wright & A. Miller, Federal Practice and Procedure § 1803 (1972); Dawson, *Lawyers and Involuntary Clients: Attorney Fees from Funds,* 87 Harv.L.Rev. 1597 (1974).[8] We have subscribed to these general views. *Lindy Bros. Builders, Inc. v. American Radiator & Standard Sanitary Corp.,* 487 F.2d 161, 165 (3d Cir. 1973); see *SEC v. Aberdeen Securities Co.,* 526 F.2d 603, 607 (3d Cir. 1975).

Thus, Kramer acted wisely in the position articulated in deposition. Clearly he perceived that he could be accused of a conflict of interest were he to anticipate a share of the potential court-awarded attorneys' fee in addition to his recovery as a member of the class.

■ Appellee Kramer also demonstrated an awareness of fealty to the spirit of Canon 9 of the Code of Professional Responsibility: "A Lawyer Should Avoid Even the Appearance of Professional Impropriety." Given the possible conflict of interest[9] between the class member plaintiff *qua* plaintiff and the class member plaintiff *qua* counsel, under circumstances in which an equitable fund may be created from which an attorneys' fee may be awarded,[10] we agree that a plaintiff class representative could not, with complete fidelity to Canon 9, serve as class counsel.

Appellees argue that *Kohn v. American Metal Climax, Inc.,* 458 F.2d 255 (3d Cir.), cert. denied, 409 U.S. 874, 93 S.Ct. 120, 34 L.Ed.2d 126 (1972), and *Kahan v. Rosenstiel,*

424 F.2d 161 (3d Cir.), *cert. denied,* 398 U.S. 950, 90 S.Ct. 1870, 26 L.Ed.2d 290 (1970), can be read as holding to the contrary. We disagree. The challenge raised in this appeal, see page 1088 *supra,* was not presented to the court in those cases. Thus it cannot be said that we have considered, adjudicated and set forth a holding regarding the duality problem.[11]

Having concluded that the attorney-plaintiff class representative may not also serve as counsel for the class in cases such as this, we must now consider the effect of Canon 9 on the situation in which the partner (or employee) of the attorney class representative is chosen as counsel.

### V.

Historically, members of this nation's bar both have formed cutting edges and have wielded shields in zealous efforts to vindicate and protect interests of all kinds—individual, public, and social; economic, political, cultural, and personal. As private attorneys general and frequently in class action contexts, they have guided litigation insisting that legislative mandates be obeyed, administrative regulations respected, and constitutional guarantees observed. Often their intense advocacy has generated controversy in both the private and public sectors. Often issues they probe are sensitive, provocative and disputatious. Recently, however, critics have challenged the altruism of some class action lawyers and charged that the paramount motivation for

---

**8.** Dawson summarized the theory thus: "[A] benefit to the fund is supposedly required. . . . The standard formula [of benefit] . . . mix[es] together three distinct ideas: that a fund can be benefited by being 'created, increased or protected' . . . ." 87 Harv.L. Rev. at 1626.

**9.** Ethical rules emanating from Canon 5 may also indicate a conflict. See especially DR 5–101 and DR 5–102. DR 5–101(B) provides, in part, that "[a] lawyer shall not [with certain exceptions] accept employment in contemplated or pending litigation if he knows or it is obvious that he or a lawyer in his firm ought to be called as a witness . . . ."

**10.** There might be cases, appropriate to class action treatment, where success would not re-

sult in a beneficial fund for the class. *See* F.R.Civ.P. 23(b)(2). In such circumstances, the conflict of interest impediments to an attorney-plaintiff class representative also serving as counsel might not be present. We do not decide the rule that should obtain in such circumstances.

**11.** "A decision is not authority as to any questions of law which were not raised or presented to the court, and were not considered and decided by it, even though they were logically present in the case and might have been argued, and even though such questions, if considered by the court, would have caused a different judgment to be given." H. Black, Law of Judicial Precedents 37 (1912).

such litigation was counsel's desire to generate substantial fees. The cynic's argument may have a certain validity. But that validity need not serve as the basis for our every rule; nor does it detract from, nor should we lose sight of, the fundamental laudatory purposes of the class action device:

Its historical purpose was to alleviate the burden on the court and its facilities in cases where a claim was common to a large number of persons. . . . Its use in claims for damages is justified where the public policy considerations of efficient court administration outweigh the potential prejudice to persons in interest who are not parties to the proceedings, but who may nevertheless become legally bound by an adjudication as if they were in fact parties litigant.

Also influencing the general acceptance of class actions has been recognition of the fact that the collective or accumulative technique of this device makes possible an effective assertion of many claims which otherwise would not be enforced, for economic or practical reasons, were it not for the joinder procedure. The 1966 amendments to Rule 23 are a restatement and reinforcement of public policy, mutually expressed by the Judicial Conference of the United States, its advisory committee on Rules of Civil Procedure, the Supreme Court, and the Congress, which candidly facilitate and encourage the use of class actions.

*Greenfield v. Villager Industries, Inc.*, 483 F.2d 824, 831 (3d Cir. 1973) (footnote omitted).

**12.** Presumably, Britton, Kramer's former employee, might also petition for an award from the fund. *See* App. at 190a.

**13.** A fair reading of Harrison's deposition testimony reveals that his interest in these proceedings is that of a class member, *i. e.*, to recover as a joint owner any damages relating to the stock in Scientific Control be held with Kramer. Kramer asked him to be a plaintiff and designated counsel for them. Harrison said that at no time had he discussed with Kramer or Kapustin any compensation for Kapustin. "I left it completely in Mr. Kramer's hands, basically for personal reasons," he said. App.

Thus, a class action is a special type of legal proceeding. Our inquiry becomes necessary only because an attorneys' fee may emanate from an equitable fund, creating a possible conflict between the interests of the plaintiff class members represented by Kramer and the interest of Kramer's partner Kapustin [12] in maximizing his award as attorney for the class.

Appellees suggest that, in this case, there are adequate safeguards against professional impropriety: "(1) Both plaintiffs have stated that they receive no portion of any attorney's fee that is awarded in this case; (2) No close association exists between plaintiff Harrison and the counsel to the class as they have never been professionally associated; (3) Both plaintiffs, although attorneys, have stated that their role in this litigation is limited to that of a party plaintiff." Appellees' Brief at 23.[13]

Whatever effectiveness such disclaimers might have in defending against an accusation of professional impropriety lodged against Kramer or Harrison, they do not meet the criticism that retention of Britton and later Kapustin contravened the appearance of propriety. And it is the *appearance*, not the *fact*, of impropriety which Canon 9 is designed to eliminate.

 As Ethical Consideration 9–2 of the Code of Professional Responsibility cautions in part, "[o]n occasion, ethical conduct of a lawyer may appear to laymen to be unethical." Laymen generally understand basic partnership attributes. The word "partner" has a meaning among the laity [14] that does not vary substantially from its juris-

at 101a. By comparison, Kramer testified that his interest in the litigation was so keen that he, as class representative, would advance the costs, even if they amounted to $100,000 or $150,000. *Ibid.* at 79a.

**14.** "Partner" is defined by Webster's as "a person who takes part in some activity in common with another or others; associate; [*e.g.*,] a) one of two or more persons engaged in the same business enterprise and sharing its profits and risks . . . ." Webster's New World Dictionary 1036 (2d college ed. 1970).

prudential ramifications.[15] Implicit in the term is a sharing of profits and losses. Esoteric internal protections in writing or under oath, insulating the plaintiff-attorney partner from participating in a fee, can hardly dissipate the lay notion that action by one partner is action for the partnership. Accordingly, we cannot agree that an appearance of an improper conflict of interest inherent in one partner's dual role as class representative and as class counsel vanishes when his partner is substituted as class counsel. To argue as appellees do is to argue against reality, against the vagaries of human nature, and against widely-held public impressions of the legal profession. Thus, if one concludes, as we do, that an appearance of impropriety, at a minimum, ensues when an attorney class representative also serves as counsel for a class that may benefit from an equitable fund, substituting a partner as counsel will not suffice as an antidote. If we are to provide force and vigor to Canon 9, a prophylactic rule prohibiting appointment of a partner as counsel is mandated in such circumstances. What we have said concerning substitution of a partner of the attorney-class representative applies equally to substitution of an attorney-employee or office associate as counsel.

■ Finally, appellees argue that disqualification of Kapustin at this late date would deprive the class of the familiarity with the case he developed during its pendency. Subsumed in this argument is the contention that appellant dallied unnecessarily in presenting its disqualification motion to the district court. On this record, we are unpersuaded by either claim.[16] The motion to disqualify was filed within two months of the denial of reconsideration of the class action certification decision. Defendants certainly could not be faulted for litigating the class certification first. Had they won on that score, the action might have gone forward as an individual action, in which case the disqualification issue might never have surfaced. See pages 1089–1090 supra. Concomitantly, we cannot accept the proposition that disqualifying Kapustin now will work an undue hardship on the class. The district court, which has supervised the progress of this case—slow though it may have been—, has stated that "[t]he issue of liability is not complex and should not consume too much trial time." 67 F.R.D. 98, 102 (denying

---

15. Black's defines "partner" as "[a] member of copartnership or firm; one who has united with others to form a partnership in business." Partnership is defined as:

> A voluntary contract between two or more competent persons to place their money, effects, labor, and skill, or some or all of them, in lawful commerce or business, with the understanding that there shall be a proportional sharing of the profits and losses between them.
> A partnership is an association of two or more persons to carry on as co-owners a business for profit.
> Partnership is a synallagmatic and commutative contract made between two or more persons for the mutual participation in the profits which may accrue from property, credit, skill, or industry, furnished in determined proportions by the parties.
> Partnership is where two or more persons agree to carry on any business or adventure together, upon the terms of mutual participation in its profits and losses.

Black's Law Dictionary 1330–31 (3d ed. 1933) (citations omitted).

16. Ethical Consideration 9–2 instructs: "When explicit ethical guidance does not exist, a lawyer should determine his conduct by acting in a manner that promotes public confidence in the integrity and efficiency of the legal system and the legal profession." (footnote omitted). The conclusion we reach today will govern similar actions in the future; it will not affect litigations already concluded. We recognize that there may now be pending class actions in which counsel arguably ought to be disqualified under the rule we announce today. Further, we recognize that in such pending actions an argument might be made, in extraordinary circumstances, that "explicit ethical guidance [did] not exist" heretofore and that invocation of the rule announced herein would not "promot[e] public confidence in the integrity and efficiency of the legal system and the legal profession." We should not and do not decide how such a hypothetical case would be decided. Resolution of the issue must await an actual case or controversy, which should be decided in the first instance by the district court with the benefit of full briefing from counsel.

motion to reconsider class certification). That being so, it follows logically that it should not require new counsel an inordinate amount of time to become sufficiently familiar with the case to proceed to trial.

## VI.

 As we have observed previously in a constitutional context, "although the right to counsel is absolute, there is no absolute right to a particular counsel." *United States ex rel. Carey v. Rundle*, 409 F.2d 1210, 1215 (3d Cir. 1969), *cert. denied*, 397 U.S. 946, 90 S.Ct. 964, 25 L.Ed.2d 127 (1970). We have concluded that vindication of the Code of Professional Responsibility requires the following rule: no member of the bar either maintaining an employment relationship, including a partnership or professional corporation, or sharing office or suite space with an attorney class representative during the preparation or pendency of a Rule 23(b)(3) class action may serve as counsel to the class if the action might result in the creation of a fund from which an attorneys' fee award would be appropriate.

The appeal at No. 75–1673 will be dismissed for want of jurisdiction. In the appeal at No. 75–1849, the order of the district court denying the motion for disqualification of appellees' counsel will be reversed and the proceedings remanded.

ROSENN, Circuit Judge (concurring).

I join fully in the court's opinion and disposition of the case. I write to make several additional points.

First, and most importantly, I understand the court to hold only that an attorney cannot act as counsel to a class when (a) the action might result in the creation of a fund from which an attorney's fee may be awarded, and (b) the named class representative is also the class counsel or an attorney professionally associated with the attorney

seeking to act as class counsel. I thus do not understand the court's rule to bar an attorney from bringing a class action as plaintiff and acting as the named class representative so long as class counsel is an attorney not professionally associated with the plaintiff attorney. Furthermore, I do not understand the opinion to bar an attorney from acting as counsel to a class of which he might be a member, or to a class with claims similar or identical to claims in which the attorney has a beneficial interest.

Some examples may serve to clarify my point. If a client seeks the advice of an attorney with respect to possible fraudulent dealings in the shares of a corporation in which the attorney is also a shareholder and if an action to recover losses due to those fraudulent dealings would assert a claim the attorney could also assert as a shareholder, I see no reason to require the attorney to decline representing the class of persons with like claims, or to decline membership in the class for him or herself. Similarly, if the attorney's spouse or the law firm in which the attorney is a partner owned the stock, I think the attorney need not decline the representation of the class. Also, if an attorney's corporate client, in which the attorney owns stock, brought an antitrust class action on behalf of it and other corporations, I do not think the attorney need decline representing the class.

I think these situations are distinguishable from the facts of the instant case primarily because there is no appearance of financial conflict of interest and no appearance of improper solicitation—i. e., that the attorney-plaintiff and class counsel collusively use the class action mechanism to acquire clients.[1] Furthermore, to the extent the named class representative has substantive duties to perform—such as monitoring the performance of class counsel or agreeing to a settlement—the fact that the representative and counsel are somewhat independent insures that the repre-

---

1. I do not mean to suggest, nor do I understand the panel's opinion to suggest, that we are concerned only with the appearances, rather than the reality, of improper solicitation. I

assume that if and when the latter does occur, it can be adequately dealt with through normal bar disciplinary procedures.

sentative will exercise unconstrained judgment.

Secondly, it is inevitable that this decision will pose some problem for district courts that have already certified classes in which the named representative and class counsel are professionally affiliated. It is my view that in such already ongoing cases automatic disqualification of counsel on defendant's motion is not mandated by this decision. Where it is possible for the class to obtain substitute counsel without substantially prejudicing the interests of the class or substantially delaying the action, the district court should disqualify counsel. There may be cases that have progressed so far and are so complex that requiring substitution of counsel would substantially delay the termination of the litigation and substantially harm the interests of the class members. In such instances, the district court may allow the litigation to proceed to termination without change in representative or counsel. The choice, in my view, lies in the informed discretion of the district court.

Finally, although I join the court's judgment on the jurisdictional issues, I continue to adhere to the views I expressed in my dissent in *Hackett v. General Host Corporation*, 455 F.2d 618, 626 (3d Cir. 1972), *cert. denied*, 407 U.S. 925, 92 S.Ct. 2460, 32 L.Ed.2d 812 (1972). There I argued that denial of class certification is an appealable order because, first, it qualifies as a collateral order under the doctrine of *Cohen v. Beneficial Finance Co.*, 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949), and second, it effectively terminates much class action litigation and thus is, in every meaningful sense, a final order. On the other hand, a class certification order does not terminate litigation, nor, in my view, does it ordinarily

create the kind of prejudice necessary to invoke the collateral order doctrine.[2]

2. The prejudice necessary to establish jurisdiction under the collateral order doctrine is that rights may be irreparably lost without review. *Hackett, supra*, 455 F.2d at 627 (Rosenn, J., dissenting); *Samuel v. University of Pittsburgh*, 506 F.2d 355, 359 (3d Cir. 1974). *See*, e. g., *Eisen v. Carlisle and Jacquelin*, 417 U.S. 156, 169–72, 94 S.Ct. 2140, 2148–50, 40 L.Ed.2d 732, 743–45 (1974), where the lack of appellate review of the district court's order requiring defendants to pay 90% of the costs of notice to class members would have irreparably foreclosed defendants from contesting that order. The prejudice resulting from merely having to continue to defend the suit is, in my view, usually insufficient to invoke appellate jurisdiction. *But see Herbst v. International Telephone and Telegraph Corp.*, 495 F.2d 1308 (2d Cir. 1974).