582 F.2d 1298
 17 Fair Empl.Prac.Cas. 1413, 17 Empl. Prac.
Dec. P 8548
Ruthie M. SHELTON, Individually and on behalf of all others
similarly situated, and James F. Williams,
Intervenor, Appellees,
v.
PARGO, INC., a corporation, Appellant.
 No. 77-1125.
 United States Court of Appeals,
Fourth Circuit.
 Argued Feb. 10, 1978.
Decided Aug. 18, 1978.
 
 Michael A. Almond, Charlotte, N. C. (John R. Wester, Fleming, Robinson & Bradshaw, Charlotte, N. C., on brief), for appellant.
 Michael A. Sheely (Shelley, Blum, Blum & Sheely, Charlotte, N. C., on brief), for appellees.
 Before HAYNSWORTH, Chief Judge, BRYAN, Senior Circuit Judge, and RUSSELL, Circuit Judge.
 DONALD RUSSELL, Circuit Judge:
 
 
 1
 This appeal presents for decision the procedure to be followed by a district court in passing upon a voluntary motion to dismiss an action, filed both as an individual and as a class action, when the individual action has been settled without court approval in advance of any certification of the action as a class action under Rule 23(c)(1), Fed.R.Civ.P.[1]
 
 
 2
 The question arises in a suit filed the last of February, 1976, by the appellee Shelton "on behalf of herself and all others similarly situated" charging racial discrimination violative of Title VII on the part of the appellant-employer. The appellee sought both injunctive relief and "monetary damages." After the action was begun, the appellee Williams intervened, also asserting racial discrimination in his employment by the appellant. The appellant accompanied its answer to the complaint with a motion to eliminate all allegations regarding a class action. The appellees (including now both Shelton and Williams) countered with a motion to certify a class and to permit the cause to proceed both as an individual and as a class action under Rule 23. In support of that motion, they alleged that between July 1, 1972 and June 30, 1973, 42 blacks had been included in the appellant's work force of approximately one hundred, seventy-three and that such a number satisfied the numerosity requirement under Rule 23.[2]
 
 
 3
 While these two motions relative to the class action aspect of the case were pending undecided, counsel for the appellee wrote the appellant, setting forth his calculation of his clients' individual damages, suggesting that the clients were "open to a reasonable offer," and inviting a proffer of settlement by the appellant.
 
 
 4
 In his calculation of appellee Shelton's pay loss (I. e., $1,166.00), counsel for appellee-Shelton adopted the formula employed by the EEOC in computing the claim, when the claim was under consideration by the EEOC. Using the same formula, counsel stated the pay loss of appellee-Williams as $3,356.00. He arrived at his fee on the basis of 43.8 hours of time devoted to the case, compensable at the rate of $50 per hour, or $2,190.00. Court costs were $19.20. The total amount thus claimed by the appellees, on the basis of which they offered almost at the outset of the case to settle their individual claims with attorney's fees, was $6,731.20.
 
 
 5
 On June 25, 1976, after some negotiation, the parties agreed upon a cash settlement of the Individual claims of the appellees (including attorneys fees) in the amount of $2,519.20. Four days after this settlement of the individual claims was agreed upon, the District Court entered its order denying both the appellant's motion to strike the allegations relating to a class action and the motion of the appellees to certify as premature. Following the completion of the settlement and the execution of releases by them, the appellees filed under Rule 41(a)(1), Fed.R.Civ.P. a "Stipulation of Dismissal."
 
 
 6
 The District Court approved the dismissal as requested by the appellees, but with qualifications. Preliminary to stating the qualifications, the District Court recited anew its earlier action denying class certification as premature.[3] It then added that the claims of the appellees, including their attorney's fees, had been settled, but with "no relief for the potential class members" provided. It found that, since only individual claims were being settled, "potential members of the uncertified class in this case (would) not be bound by the settlement." Despite this, it concluded, citing Muntz v. Ohio Screw Products (N.D.Ohio 1973) 61 F.R.D. 396, that "Rule 23(e) of the Federal Rules of Civil Procedure nevertheless requires that notice of the proposed settlement be given to all the class members, even though the dismissal occurs without any class ever being certified." This is so, it declared, because putative class members "may (have been) relying on plaintiffs to prosecute their claims, and are (therefore) entitled to notice so that they can take appropriate action to protect their own rights." It accordingly directed the parties to the action to submit an appropriate notice to be given absentees but provided that, after notice in conformity with its order had been given, "a final order of dismissal will then be entered" which "will be without prejudice to the rights and claims of the unnamed class members."[4] In the approved notice, the court adds that the proposed order of dismissal "does not foreclose your asserting any claim that you may have against" the appellant and "you should decide whether, with or without a lawyer, to pursue that claim yourself."
 
 
 7
 In charging error in the District Court's ruling that Rule 23(e) mandated notice of the stipulated dismissal, the appellant urges (1) that Rule 23(e) is inapplicable to the settlement of an action which, though filed as a class action, has not been certificated under (c)(1), (2) as such, that the settlement of such uncertificated action, commenced as a class action, is no more than the settlement of an individual action, and, finally, (3) that settlements of such cases are to be encouraged, not inhibited, by constraints such as the qualification which the District Court imposed on the settlement and dismissal in this case, particularly since the District Court in effect found that the settlements in this case would not prejudice absentee potential class members. It does concede that there is a line of authority, with which it seems not to agree, to the effect that notice to absentee potential class members, prior to approval of a settlement and dismissal before certification of an action, commenced as a class action, is justified under the spirit and purpose of 23(e) but it contends that all of these cases, including the Muntz Case which the District Court cites in support of its ruling, condition the requirement of notice on a prior holding that the action is one proper for certification under (c)(1). Assuming Arguendo that such authorities establish the correct rule, the appellant would fault the District Court for failure to hold "in abeyance" any requirement of notice to absent putative class members "until and unless" class certification has been found proper under (c)(1).[5] It goes further and argues that, if the District Court had applied the procedure of Muntz, it would have been compelled to find, as did the court in Muntz, that class certification was not warranted in this case,[6] and should, having made that finding, have approved the settlements of the appellees' individual cases and the dismissal of the action. Accordingly, whether the procedure approved in Muntz or that, which, in the absence of prejudice to the absentees, would freely permit the voluntary dismissal before certification of an action begun as a class action, the appellant contends that the District Court must be found to have committed error in requiring notice to absentee potential class members prior to any class having been certificated as a condition to approval of a voluntary dismissal in this case.
 
 
 8
 It is obvious that the centerpiece in the District Court's reasoning that notice to absentee putative class members was required before it could approve the proposed settlement was its assumption that the notice requirement of Rule 23(e) applies absolutely to any action commenced as a class action, even though the action has not been certificated as a class action under (c)(1). However, Rule 23(e) does not apply to any action simply because it was begun as a class action. By its explicit language, Rule 23(e) is confined in operation to the settlement and dismissal of a "class action." This is the view expressed in the exhaustive Note on Developments Class Actions in 89 Harv.L.Rev. 1318 at 1542, n. 32 (1976).[7] There, the editors put it that "rule 23(e) is applicable only upon dismissal of a 'class action' * * *." This tracks the earlier language of Judge Friendly in Weight Watchers of Phila. v. Weight Watchers Int. (2d Cir. 1972) 455 F.2d 770, 773 to the effect that, "it is only the settlement of the class action itself without court approval that F.R.Civ.P. 23(e) prohibits." This construction of 23(e) is also implicit in Professor Moore's conclusion that "(c)ourt approval of dismissal (under 23(e)) will normally not be obtainable prior to the 23(c)(1) determination since the members of the class to whom notice must be sent will not yet have been determined," I. e., until the case has been certificated as a class action and the class or classes have been identified.[8] It is a construction, too, which follows inescapably from the language of the Supreme Court in Sosna v. Iowa (1975) 419 U.S. 393, 399, n. 8, 95 S.Ct. 553, 557, 42 L.Ed.2d 532:
 
 
 9
 " * * * Once the suit is certified as a class action, it may not be settled or dismissed without the approval of the court. Rule 23(e)."
 
 
 10
 We made substantially the same observation earlier in Roman v. ESB, Inc., supra, 550 F.2d at 1348, where we declared that the "definition of the class (something which only occurs as the result of a certification determination) is an essential prerequisite to maintaining a class action."[9] Finally, it should be remembered that the primary purpose of 23(e) was to insure that an absentee class member, against whom an order of dismissal with prejudice would be Res judicata, should be afforded an opportunity to be heard before any such order was entered. The necessity for court approval to achieve such purpose normally, though, exists only after the action has been certificated as a class action, since any order entered in the uncertificated case binds solely the individual plaintiff and not absentee class members.[10] Accordingly, the rationale for 23(e) is protection of the absent members of a duly certificated "class action" and its application has been generally so confined, as we have seen.[11]
 
 
 11
 We are aware that in Duncan v. Goodyear Tire and Rubber Company (E.D. Wis.1975) 66 F.R.D. 615, 616, and in Magana v. Platzer Shipyard, Inc. (S.D.Tex.1977) 74 F.R.D. 61, 66, both of which involved precertification dismissals of actions begun as class actions, the language of Sosna, quoted Supra, was dismissed as without "any special significance" on the question whether 23(e)'s "requirement of notice should not be presumed to apply (in connection with a motion to dismiss) prior to class certification," to use Magana's rationale or, to employ Duncan's phrasing, on the "question presented by this case: is notice of a compromise also required Before a class action certification?" (Emphasis in text) We are convinced, however, that Professor Wheeler is more accurate in his reading of Sosna, particularly in light of later cases pointing clearly in the same direction, that 23(e) applies only to the dismissal of the class action. He has said that "(t)he clear implication of the italicized statement (i. e., 'Once the suit is certified as a class action, it may not be dismissed without the approval of the court') is that the requirement of court approval for settlement or dismissal embodied in rule 23(e) does not apply until an action has been certified as a class action."[12] Moreover, this construction of the language of Sosna is in line with those recent decisions of the Supreme Court that class actions are not created by mere allegations in a complaint.[13] It is the actual certification of the action as a class action under 23(c) and (a) which alone gives birth to "the class as a jurisprudential entity,"[14] changes the action from a mere individual suit with class allegations into a true class action qualifying under 23(a), and provides that sharp line of demarcation between an individual action seeking to become a class action and an actual class action.[15] Thus, in Baxter v. Palmigiano (1976) 425 U.S. 308, 311, n. 1, 96 S.Ct. 1551, 1554, 47 L.Ed.2d 810, the court said:
 
 
 12
 " * * * The District Court treated the suit as a class action, Clutchette v. Procunier, 328 F.Supp. 767, 769-770 (N.D.Cal.1971), but did not certify the action as a class action within the contemplation of Fed.Rules Civ.Proc. 23(c) (1) and 23(c)(3). Without such certification and identification of the class, the action is not properly a class action. Indianapolis School Comm'rs v. Jacobs, 420 U.S. 128 (95 S.Ct. 848, 43 L.Ed.2d 74) (1975)."[16]
 
 
 13
 If it is true that 23(e) applies only to class actions and not to uncertificated actions such as the present one, it may be plausibly argued that 23(e) offers no impediment to the voluntary settlement of the individual claims of the appellees in this case and consequently the unconditional dismissal of the action under Rule 41(a)(1) except for one important circumstance unique to the appellees. The parties, who are settling their individual claims, are not merely members of a putative class; they are the representative parties, without whose presence as plaintiffs the case could not proceed as a class action. Had the appellees been other than the representative parties, there would be no objection to a voluntary settlement of their claim.[17] But, by asserting a representative role on behalf of the alleged class, these appellees voluntarily accepted a fiduciary obligation towards the members of the putative class they thus have undertaken to represent.[18] They may not abandon the fiduciary role they assumed at will or by agreement with the appellant, if prejudice to the members of the class they claimed to represent would result or if they have improperly used the class action procedure for their personal aggrandizement. This has been declared in repeated decisions. Thus, in Cohen v. Beneficial Loan Corp. (1949) 337 U.S. 541, 549-50, 69 S.Ct. 1221, 1227, 93 L.Ed. 1528, the Court said:
 
 
 14
 "Likewise, a stockholder who brings suit on a cause of action derived from the corporation assumes a position, not technically as a trustee perhaps, but one of a fiduciary character. He sues, not for himself alone, but as representative of a class comprising all who are similarly situated. The interests of all in the redress of the wrongs are taken into his hands, dependent upon his diligence, wisdom and integrity. And while the stockholders have chosen the corporate director or manager, they have no such election as to a plaintiff who steps forward to represent them. He is a self-chosen representative and a volunteer champion. The Federal Constitution does not oblige the state to place its litigating and adjudicating processes at the disposal of such a representative, at least without imposing standards of responsibility, liability and accountability which it considers will protect the interests he elects himself to represent. It is not without significance that this Court has found it necessary long ago in the Equity Rules and now in the Federal Rules of Civil Procedure to impose procedural regulations of the class action not applicable to any other. We conclude that the state has plenary power over this type of litigation."
 
 
 15
 And the Court in that case recognized the form of abuse which the Court should be zealous in frustrating through the exercise of its supervisory power over the special remedy of class actions:
 
 
 16
 "Unfortunately, the (class action) remedy itself provided opportunity for abuse, which was not neglected. Suits sometimes were brought not to redress real wrongs, but to realize upon their nuisance value. They were bought off by secret settlements in which any wrongs to the general body of share owners were compounded by the suing stockholder, who was mollified by payments from corporate assets. These litigations were aptly characterized in professional slang as 'strike suits.' And it was said that these suits were more commonly brought by small and irresponsible than by large stockholders, because the former put less to risk and a small interest was more often within the capacity and readiness of management to compromise than a large one." (p. 548, 69 S.Ct. p. 1226.)[19]
 
 
 17
 The abuse identified in Cohen can arise at any point after an action has been filed as a class action. It may arise as well at the precertification stage as after certification as a class action. Because of this the District Court should have both the power and the duty, in view of its supervisory power over and its special responsibility in actions brought as class actions, as set forth in 23(d),[20] to see that the representative party does nothing, whether by way of settlement of his individual claim or otherwise, in derogation of the fiduciary responsibility he has assumed, which will prejudice unfairly the members of the class he seeks to represent.[21] Apart, then, from the question whether 23(e) provides authority for judicial control over settlements and compromises by representative parties or not, the District Court would appear to have an ample arsenal to checkmate any abuse of the class action procedure, if unreasonable prejudice to absentee class members would result, irrespective of the time when the abuse arises. In the exercise of such responsibility, however, the District Court need not make a certification determination, or give notice to the absent members of the class or classes certified, before it disposes of the motion to dismiss. If it found no violation of the fiduciary responsibilities by the plaintiff, there would be no reason why the District Court should not decide whether or not to permit the dismissal without certification and without notice to absent putative class members.
 
 
 18
 Nor, contrary to what appellees seem to argue, would the fact that the representative plaintiff has settled his individual claim without court approval prior to any certification hearing moot the case so as to foreclose the District Court from making such inquiry into the settlement or from asserting the right to deny dismissal of the action if that seemed appropriate. Under this argument, the parties could by any collusive settlement frustrate the power of the District Court to see that a plaintiff, who has voluntarily assumed the fiduciary role of a class representative, does not abandon that role to the prejudice of the class he has assumed to represent or for his own improper personal aggrandizement. Both the spirit of 23(e), to which we refer subsequently, and the supervisory power of the District Court over any asserted class actions, would deny that power to the parties themselves. Nor do we perceive any inconsistency between this conclusion and that reached by the Supreme Court in Jacobs, supra, Spangler, supra, or O'Shea v. Littleton (1974) 414 U.S. 488, 494, 94 S.Ct. 669, 38 L.Ed.2d 674, Cf., Comment, 1974 Duke L.J. at 596-597. In those cases, the disqualification in standing suffered by the class plaintiff resulted involuntarily by operation of law without any collusion between the parties. What we are dealing with is the possible loss of standing because of the voluntary action of the parties themselves and not an involuntary loss of standing on the part of the plaintiff arising out of events beyond the plaintiff's control.
 
 
 19
 Many of the authorities which have been confronted with the possibility of abuse in pre-certificated actions begun as class actions have, however, relied for their authority to review the proposed settlement and dismissal upon a rule which they derive from the purposes of 23(e).[22] There is no such requirement in any express language of 23(e); it is a rule grounded on policy considerations, a presumption created by the courts because of the possibilities of abuse involved in the precertification settlement of the representative party's claim, and because "a contrary conclusion would put an undue premium on early settlements in order to avoid the application of Rule 23(e) and even might encourage collusion during the period before the class action issue is resolved, which might operate to the disadvantage of those class members who are not before the court."[23]
 
 
 20
 This procedural rule for dealing with voluntary dismissals of the pre-certification case begun as a class action, as if controlled by 23(e), was first enunciated in a case originating shortly after the effective date of the 1966 Amendments to Rule 23, Philadelphia Electric Co. v. Anaconda American Brass Co. (E.D.Pa.1967) 42 F.R.D. 324, and most subsequent statements of the procedure, whether by courts or textwriters, cite that case as authority and quote with approval the procedural principle as stated therein. In Philadelphia Electric, there were pre-class certification settlements by the plaintiffs of their claims against three of the thirteen defendants in an anti-trust action begun as a class action. The plaintiffs sought to dismiss the action as to the settling defendants and for "entry of final judgments barring all further claims by the named plaintiffs and by any of the class or classes they purport to represent."[24] While the court recognized that the motion to dismiss gave rise to "a number of difficult problems," particularly "as no class or classes have yet been determined, or even generally identified,"[25] it found three justifications, under the facts of that case, for the procedural rule it later declared. First, it concluded that "(u)nder any view of the matter, however, the proposed settlements must be regarded as attempting to compromise the claims of the class, not just the named plaintiffs. Rule 23(e) clearly applies to this situation; indeed, due process concepts might well be held to require notice, even in the absence of Rule 23(e)."[26] Secondly, the action had been begun within a week or two of the expiration of the limitation period. After the action was begun, "approximately one hundred" petitions for intervention had been filed by other aggrieved parties and these petitions had been "held in abeyance pending determination of the class action question."[27] All the parties seeking to intervene would be barred by the statute of limitations if class certification were denied. Finally, the Court said that "a court should know what claims are being compromised, before being asked to approve a compromise; and that no litigant should be permitted to enhance his own bargaining power by merely alleging that he is acting for a class of litigants."[28] Against that background of a pre-certification attempt to settle without notice class claims against certain of the defendants with obvious prejudice to petitioning intervenors, the court promulgated as a basis for judicial control and review of the proposed dismissal the procedural principle that "during the interim between filing and the 23(c)(1) determination by the court, it must be assumed to be a class action for purposes of dismissal or compromise under 23(e) unless and until a contrary determination is made under 23(c)(1)."[29] The Court accordingly ordered that "the respective motions * * * for approval of the compromise settlement of these actions and for the dismissal of the said defendants as parties hereto, shall be held in abeyance pending the determination of the class action question under Fed.R.Civ.P. 23(c)(1) or until further order of court."[30] As thus framed and applied, this principle has been generally followed in the statement of the procedure to be observed normally by District Courts in considering any voluntary settlement or motion to dismiss by the representative plaintiff in a pre-certificated case.[31]
 
 
 21
 As stated in Philadelphia Electric and repeated in the cases which have followed that decision, this procedural rule for dealing with the voluntary pre-certification settlement in the factual context depicted in that case contemplates that any consideration of the motion to dismiss and for approval of the settlement shall be "held in abeyance" "until" the District Court has determined whether class certification in the case is appropriate. Accordingly, under this procedure, notice to absent putative class members will only be required if the District Court, as a result of a certification hearing, finds that class certification under 23(c)(1) is proper. Illustrative of this application of the procedure is the authority upon which the District Court in this case grounded its requirement of notice. Muntz v. Ohio Screw Products, supra, 61 F.R.D. 396. There, the court recognized and applied the procedural rule, but, before requiring notice, it proceeded, as did the Court in the Philadelphia Electric case, to "examine whether the class alleged in this suit is proper for certification in order to avoid the vain act of giving settlement notice to an invalid class." After inquiry it concluded to deny "class certification for the reason that the class is not too numerous to permit joinder" and disposed of the motion to approve the settlement with this sentence:
 
 
 22
 "Class certification having been denied, the Court will enter the settlement with respect to the individual plaintiff. * * *"This case is closed."[32]
 
 
 23
 This application of the rule would make compulsory, in disposing of a pre-certification settlement and motion to dismiss, a certification determination under 23(c)(1). If certification is found proper as a result of such certification proceeding, notice of the voluntary settlement in the pre-certificated situation would have to be given absentee class members. Only if certification were found improper, would the absolute notice requirement of 23(e) be dispensed with. We, however, do not think the procedural rule to be that inflexible and formalistic, nor do we think that Philadelphia Electric compels any such result.
 
 
 24
 In Philadelphia Electric, as we have already pointed out, the parties were seeking to make a settlement of a class action, which the parties themselves assumed to exist as such, and to make that settlement binding on absent members of that assumed class. There was also manifest prejudice to the intervening petitioners. The court correctly perceived in such settlement not simply a 23(e) problem but, perhaps more importantly, due process problems inherent in the class action settlement by reason of the absence of any notice. It sought to formulate on policy grounds a basis for subjecting such a settlement to a procedure which would satisfy the primary purpose of 23(e) in meeting due process requirements[33] as well as to serve the judicial purpose of protecting against any misuse of the class action procedure to the prejudice of absentees clearly relying on the pendency of the action. But, where there are no due process considerations and where there is no binding effect of the settlement on absent potential class members of unfair prejudice to such absentees, the necessity for a pre-certification hearing, as a condition to approval of a voluntary settlement at the pre-certification settlement of the action, becomes in our view a matter for the discretion of the District Judge, to be exercised by him after a careful inquiry into the circumstances surrounding the proposed settlement.[34] This is not to say that a pre-certification determination and notice are never appropriate in the pre-certification case. The question is not one of power. The power is clear whether we look to the purposes of 23(e) or to the specific language of 23(d) (2).[35] But the question is whether the court should exercise the power and that is a question committed for resolution to the informed judgment of the District Court.[36] And this view accords with the modern view and with the reasoning in Philadelphia Electric itself asserted by the commentators recently and in the more recent cases themselves.
 
 
 25
 Professor Newberg in his recent authoritative work on Class Actions seems to support this view that "(i)f neither loss of benefits to the class nor evidence of collusive agreement is present, notice of dismissal (in a voluntary settlement at the pre-certification stage) is unnecessary," observing:
 
 
 26
 "The language of Rule 23(e) suggests that both court approval and notice are mandatory on dismissal or compromise of a class suit, and some courts have so held. However, on closer analysis, notice is not mandatory in all instances, but 'shall be given to all members of the class in such manner as the court directs.' Broadly interpreted, this language is sufficiently flexible to permit the court to approve a dismissal, but to determine that no notice at all is required, where the dismissal will not result in any prejudice to the class. There is no question that the narrower interpretation, that the rule require mandatory notice to the class in all instances, will effectively enforce the policy of the rule, but it may also cause notice to issue unnecessarily when the spirit of Rule 23 is not violated, or force the court to employ unneeded alternative methods to circumvent the policy." § 4950, pp. 405-406.
 
 
 27
 "Recently, courts have adopted a more enlightened approach, which avoids judicial waste of time and relieves the parties of the expense of notice when it is inappropriate. Each request for dismissal is examined according to its own circumstances, to determine whether it may violate the function of the rule. If neither loss of benefits to the class nor evidence of collusive agreement is present, notice of dismissal is unnecessary." § 4960, p. 406.
 
 
 28
 Professor Arthur Miller in his monograph prepared for the Federal Judicial Center on "An Overview of Federal Class Actions: Past, Present and Future" (December, 1977) reaches much the same conclusion. After declaring that "the purposes to be served by Rule 23(e) require the conclusion that even though a class has not been certified, the provision (I. e., 23(e)) technically is applicable at any point after the commencement of an action claiming to be a class action," he adds as a "saving grace to this embracive reading of Rule 23(e) * * * that when the settlement occurs during the pre-classification period, particularly very early in the action, such as before answer or discovery on the Rule 23(c)(1) question, the judicial inquiry under subdivision (e) can be much more modest than it typically is after certification. This approach seems proper because the settlement often is in the nature of a discontinuance of the class action status of the case and it is unlikely that other class members will have detrimentally relied on its institution. All the court need require is a demonstration by the attorneys that no one will be prejudiced by removing the class allegations. But it is important that the courts press the lawyers on this and perhaps make a record of their representations."[37]
 
 
 29
 In fact, the editors in the Harvard Study express the view that whether notice (which presupposes an identification of the appropriate class or classes through a certification determination) is required under 23(e) is within the District Court's discretion always. They declare:
 
 
 30
 " * * * The mandatory aspect of the rule (i. e., 23(e)), however, has been interpreted to apply to the approval requirement only, leaving the court free to omit notice that would not further class interests."
 
 
 31
 They justify this interpretation of the Rule, observing that such a "flexible interpretation of rule 23(e) avoids * * * a formalistic approach, * * * (and) seems more compatible with the functional orientation of the 1966 amendments."[38]
 
 
 32
 This approach has been adopted in an extremely well-reasoned recent case, in which it was held in the pre-certificated settlement context "that notice of the proposed individual settlement to absent class members, although usually necessary, is not compelled as a matter of law in every case, but rather should be dependent upon whether or not the disclosed facts surrounding the compromise dictate class-wide disclosure in order to prevent Rule 23 abuse or protect the interests of putative class members."[39]
 
 
 33
 Such an approach to the voluntary settlement of the pre-certificated action serves the salutary purpose of permitting courts to approve such settlements where it finds after a careful hearing that none of the evils, the frustration of which was found to justify the Philadelphia Electric rule, are present, without imposing on the court the laborious duty in such a case to conduct a certification determination or to give notice to absentee class members. This procedure, also, relieves the court of the time-consuming burden of managing what is likely a complex and involved class action, again without permitting any misuse of the class action device and without any unfair prejudice to absent putative class members. After all, "(i)t hardly seems necessary to point out that there is an overriding public interest in settling and quieting litigation. This is particularly true in class action suits which are now an ever increasing burden to so many federal courts and which frequently present serious problems of management and expense."[40] Courts cannot be blind to the fact that, as one court has observed with possibly some hyperbole,"(c)lass actions have sprouted and multiplied like the leaves of the green bay tree,"[41] or to what Professor Miller describes as "the practice of many lawyers almost Pavlovian in its character of inserting class action allegations in their complaints" and to the fact that "(i)t is clear that either boiler-plate complaints are circulating among lawyers in certain substantive areas, the environmental, consumer, and Title VII fields being the most obvious, or for reasons that mystify me, lawyers think their cases gain in stature when there is a class action threat in the complaint."[42] Yet, if 23(e) is to be strictly applied in connection with any proposed voluntary settlement in a pre-certificated case and the parties are to be compelled, even as a predicate for the judicial consideration of the proposed settlement, to go through a certification determination, followed by notice to all class members if certificated,[43] an almost insurmountable barrier will have been erected to the voluntary pre-certificated settlement of any action in which the plaintiff, following the "Pavlovian" practice noted by Professor Miller, has inserted a conclusory class action allegation merely in "boiler-plate" form; in fact, such a ruling would mean that "both sides (in such an action) will be channeled into an all-out litigation of every class action issue once the complaint is filed, thereby ensuring that every action brought as a class action will be costly and time-consuming for the parties, the court, and the public."[44] Surely, if the district court finds, after a full hearing, that there has been no misuse of the class action procedure and no unreasonable prejudice to the absent potential class members, no reason exists under Philadelphia Electric, judicially formulated merely to checkmate the evils of misuse and prejudice, to compel the district court to require, as a condition to a voluntary settlement a certification determination, and possibly notice to absentees, when such a procedure will, as a practical matter, mean that no action which includes a mere class action allegation will be settled. As Professor Miller states, "(s)ince the certification question is an extremely difficult one and often takes two or more years to resolve, the litigants should not be inhibited from settling by artificially declaring that the certification process must be completed first."[45]
 
 
 34
 It has been suggested that much of the difficulty connected with a certification determination can be obviated since "(t)he class definition is obvious in several types of class actions; suits involving federal securities laws and suits alleging discrimination in employment are two ready examples."[46] That argument smacks of the early tendency of the courts, deprecated by Professor Miller in his monograph to which we have several times referred, to treat classification "somewhat cavalierly."[47] That mood no longer prevails.[48] Courts have begun to give to class certification questions the care and attention they deserve and this applies to racial discrimination cases as well as to any other type of class actions. Discrimination cases do not qualify as Per se class actions; they must meet the requirements of 23(c)(1) for class certification the same as any other type of action and may not be treated as true class actions merely because they are supported by "boiler plate memoranda laden with self-serving conclusions."[49] Any notion that such cases do not require the same inquiry with reference to compliance with 23 as other types of cases was authoritatively dispelled by the decision in East Texas Motor Freight v. Rodriguez, supra 431 U.S. at 405, 97 S.Ct. at 1898, in which the Court said that, while "suits alleging racial or ethnic discrimination are often by their very nature class suits, * * * careful attention to the requirements of Fed.Rul.Civ.Proc. 23 remains nonetheless indispensable" in such cases. And that has long been the rule in this Circuit.
 
 
 35
 In Doctor v. Seaboard Coast Line R. Co. (4th Cir. 1976) 540 F.2d 699, 706-707, we said:
 
 
 36
 "Rule 23(a) sets forth the 'mandatory requirements' that must be satisfied for the maintenance by a plaintiff of a class action; and, while suits involving racial discrimination lend themselves generally to class treatment, a plaintiff does not satisfy the burden that is his in order to qualify as a proper representative to maintain such an action merely because of his or her race or because he designates his action as a class action. 'Title VII plaintiffs are not exempted from the prerequisites of Rule 23(a).' To satisfy the requirements of Rule 23, there must be a class of individuals raising the same claims or defenses too numerous for joinder and the plaintiff must be a representative of that class with a claim 'typical of the claims or defenses of the class' both 'at the time the complaint is filed, and at the time the class action is certified by the District Court pursuant to Rule 23, . . .' "
 
 
 37
 In resolving the issue of class certification, the court may not confine itself to the allegations of the complaint. An intelligent decision on class certification requires "at least a preliminary exploration of the merits" of the plaintiff's claim.[50] Based on that exploration, the court must make specific findings establishing that the case satisfies the several requirements for certification. Professor Miller says in this connection that, "(i)f you parse the language of the Rule, you discover that the district judge must make seven affirmative findings before the case can be certified as a class action."[51] To aid in making such findings discovery is to be encouraged.[52] This procedure was followed in Roman v. ESB, supra, 550 F.2d 1343, a racial discrimination case, where the District Court, as a result of extensive discovery, proceeded to identify the class by denying the right of the plaintiffs to represent the interests arising out of conduct by the defendant by which they were not personally aggrieved.[53] The class was thus limited in that case to 53 persons, a number which the District Court had found did not satisfy the numerosity requirement of Rule 23; and this decision was affirmed on appeal. If the right of the plaintiff and the intervenor to appear as proper class representatives in the present case is restricted to the claims of misconduct by the defendant by which they claim to be aggrieved, it is doubtful that, under any standard of numerosity or typicality, to say nothing of any of the other requirements for certification, this action could qualify for class certification. This, however, is a question not before us now and for the resolution of which we have an inadequate record. We note it only to indicate the difficulties presented in any certification determination in the present case, and to illustrate why a certification determination, with all its burdens, should not be a Sine qua non in all instances for consideration by the District Court of a settlement and motion to dismiss, when the dismissal is confined to the plaintiff's individual claim.[54]
 
 
 38
 We accordingly conclude that, before a District Court may consider or approve a voluntary pre-certification settlement of an action begun as a class action, it is not compelled to undertake the laborious process of arriving at a certification determination under 23(c)(1), with all the burdens such responsibility would entail. Before it may do so, though, the court must, after a careful hearing, determine what "claims are being compromised" between the plaintiff and defendant and whether the settling plaintiff has used the class action claim for unfair personal aggrandizement in the settlement, with prejudice to absent putative class members. If, as a result of such hearing, the court is clearly satisfied that there has been no abuse of the class action device and no prejudice to absent putative class members, it may approve the settlement and dismissal without going through with a certification determination or requiring notice to be given to absent putative class members. We repeat what was said earlier that this is not to say that the District Court should not hold under the authority of Rule 23(d)(2) a certification hearing, or order notice, unless it has found the settlement collusive or prejudicial, to absent putative class members; the District Court may in its discretion, if it concludes that the "fair conduct of the action" requires it, order notice to absent putative class members. All we are saying is that, if it has found neither collusion nor prejudice, it is within the discretion of the District Court, under the facts of the particular case, to approve the dismissal without requiring a certification determination or a notice as mandated by 23(e).
 
 
 39
 In weighing whether to require a certification determination and notice under the foregoing rule, the District Court "should focus primarily on the possibility that the pre-certification compromise is the product of collusion."[55] The rationale for thus giving "less weight" to the possibility of prejudice to absent putative class members in the pre-certification context is that, unlike the situation in a certificated class action, a "pre-certification dismissal does not legally bind absent class members,"[56] and, before certification, the absent putative class member has at best a mere "reliance interest,"[57] the strength of which will vary with the facts of the particular case. As Professor Wheeler has pointed out, and as the Court in Magana underscored, this "reliance interest" is at best "speculative." After all, "no notice to purported class members is required upon the filing of a class action. Therefore, any reliance produced by such a filing arises as a consequence of such persons learning of the action through the news media or some other secondary source. The danger of reliance is thus generally limited to actions that would be considered of sufficient public interest to warrant news coverage of either the public or trade-oriented variety. Also, reliance can occur only on the part of those persons learning of the action who are sophisticated enough in the ways of the law to understand the significance of the class action allegation."[58] Because this "reliance interest" is often thought to be so "speculative" as to warrant little or no consideration,[59] a court should consider the relevant facts and circumstances in order to determine whether the possible reliance interest of the absent putative class members in the particular case is sufficiently realistic to make necessary class notice.[60]
 
 
 40
 In "focusing" on the possibility of collusion, on the other hand, the District Court should conduct a careful inquiry into the terms of the settlement, particularly the amount paid the plaintiff in purported compromise of his individual claim and the compensation to be received by plaintiff's counsel, in order to insure that, under the guise of compromising the plaintiff's individual claim, the parties have not compromised the class claim to the pecuniary advantage of the plaintiff and/or his attorney. We reject, however, the suggestion that merely because the settlement involved some payment to the plaintiff, notice must be given in any event.[61] The acceptance of such a suggestion would mean as a practical matter that there could never be a voluntary settlement of a pre-certification case since the requirement of notice, based on a certification determination defining the class to be noticed, would be generally an insurmountable barrier to any settlement. We repeat that the amount of the compromise payment is an important fact to be given careful consideration by the District Court in resolving the possibility of collusion in the settlement, but we would emphasize that the weight to be accorded this fact as well as all the other circumstances surrounding the settlement, is a decision committed to the discretion of the District Court, whose decision is only to be reversed for clear abuse of that discretion.
 
 
 41
 We do not undertake to identify all the varying circumstances to be evaluated by the District Court in exercising its discretion in this connection. We confine ourselves merely to deciding that, in the pre-certification settlement context of an action begun as a class action, a District Court is not automatically obligated to order notice to all putative class members under the terms of 23(e) but should, after proper inquiry, determine whether the proposed settlement and dismissal are tainted by collusion or will prejudice absent putative members with a reasonable "reliance" expectation of the maintenance of the action for the protection of their interests. If it determines both issues in the negative, the District Court may approve the settlement. Such a result would serve the interests of the public in the orderly disposition of litigation and would relieve the court of the burden of an unnecessary time-consuming trial. Should it find, on the other hand, that the settlement was tainted or will prejudice the putative class members with a reasonable "reliance" expectation, it should hold a certification hearing and, if it certificates a class, should order notice to the members of the class so defined. Of course, if the District Court finds that class certification is not in order, it should dismiss the action in any event.
 
 
 42
 Manifestly, the District Court did not follow this procedure in this case. It made no inquiry into the circumstances of the settlement; it held no certification hearing; it ordered instant notice under 23(e). This was error. The District Court should have given the parties a hearing, should have inquired carefully into the circumstances of the settlement, and made findings on whether the settlement was tainted by collusion, or whether absent putative class members, with a reasonable basis for a "reliance" expectation, would be prejudiced by the settlement. Should it have found either of such facts to exist, it should have proceeded to determine whether a class certification was proper in the case and only if it so found, should notice under 23(e) have been ordered.
 
 
 43
 The proceedings are accordingly remanded to the District Court with instructions to proceed to consider and dispose of the motion to dismiss in accordance with the foregoing principles.
 
 
 44
 REVERSED AND REMANDED WITH INSTRUCTIONS.
 
 
 
 [1]
 Involuntary settlements are not subject to Rule 23(e). 7A, Wright & Miller, Federal Practice & Procedure, § 1797, p. 235 (1972); 3 Newberg, Class Actions, § 4930, p. 405 (1977); Hutchinson v. Fidelity Inv. Ass'n (4th Cir. 1939) 106 F.2d 431, 436; Pelelas v. Caterpillar Tractor Co. (7th Cir. 1940) 113 F.2d 629, 633, Cert. denied 311 U.S. 700, 61 S.Ct. 138, 85 L.Ed. 454; Cf., however, Brookhaven Housing Coalition v. Sampson (E.D.N.Y.1974) 65 F.R.D. 24, 25
 
 
 [2]
 The appellees seem to assume that, in certification of a racial discrimination case, numerosity is the only issue. As we indicate later, this assumption is ill-founded. Further, they apparently feel that the number 42 automatically established numerosity. However, we found in Roman v. ESB, Inc. (4th Cir. 1976) 550 F.2d 1343, 1348-49, that 53 would not meet the numerosity requirement in a racial discrimination case. See, generally, on this point, Connolly and Connolly, Qualifying Title VII Class Action Discrimination Suits: A Defendant's Perspective, 9 St. Mary's Law J. 181, 183-4 (1977)
 
 
 [3]
 It presumably made this finding of prematurity because on the record as it then existed the court was unable to certify the action and it felt that, in fairness to the appellees, it should delay ruling on the motion until after full discovery was had and the issues relative to certification had been amply exposed. See, East Texas Motor Freight v. Rodriguez (1977) 431 U.S. 395, 406, n. 12, 97 S.Ct. 1891, 52 L.Ed.2d 453
 
 
 [4]
 Presumably it meant that, subject to the absence of any intervention by another absentee class member, the order of dismissal would be entered
 
 
 [5]
 It seems accepted doctrine that there is no obligation on the District Court to give notice of a hearing on the question whether the action should be certificated as a class action. Dolgow v. Anderson (E.D.N.Y.1971) 53 F.R.D. 664, 690, Aff'd. 2 Cir., 464 F.2d 437, is the only reported case which clearly recognizes this, but the approved practice generally is, as we have said, not to require notice. In that case, the court treated the denial of class certification as a dismissal on the merits and found for that reason that 23(e) did not apply. It, also, cited from the Advisory Committee's Note to Rule 23(c)(1) this language:
 "Whether the court should require notice to be given to members of the class of its intention to make a (rule 23(c)(1)) determination * * *, or of the order embodying it, is left to the court's discretion under subdivision (d)(2)."
 
 
 [6]
 This argument is predicated upon the claim that the appellees, by reason of their prior settlement of their individual claims, could no longer qualify as proper class representatives. It follows, the appellant would contend, that, since there is no longer any proper class representative, the action cannot be certificated as a class action but must be dismissed as moot. See Elias v. National Car Rental System, Inc. (D.Minn.1973) 59 F.R.D. 276, 277. Nor can the Court, the appellant would add, continue the action, despite the absence of a representative party, in the hope, by notice to absentees, of securing a substitute representative party, for this is "merely soliciting a client for plaintiff's counsel under the aegis of the court." Elias, supra. We shall refer to this argument later
 
 
 [7]
 This Note is hereafter referred to as Harvard Study
 
 
 [8]
 3B Moore's Federal Practice, § 23.80 (2.-1) at 23-1506 (2d ed., 1977)
 
 
 [9]
 In Satterwhite v. City of Greenville, Tex. (1977) 557 F.2d 414, 417, n. 9, the Court noted:
 " * * * Justice Brennan later indicated in Franks (Franks v. Bowman Transp. Co., 424 U.S. 747, 96 S.Ct. 1251, 47 L.Ed.2d 444) that the Court in Jacobs Board of School Com'rs v. Jacobs, 420 U.S. 128, 95 S.Ct. 848, 43 L.Ed.2d 74) had also viewed certification as a prerequisite to the existence of a case or controversy involving the class. * * * The recent Rodriguez decision also suggests that certification is the appropriate starting point in cases such as ours" (I. e., class actions).
 
 
 [10]
 Beaver Associates v. Cannon (S.D.N.Y.1973) 59 F.R.D. 508, 510; Polakoff v. Delaware Steeplechase and Race Ass'n (D.Del.1966) 264 F.Supp. 915, 917
 
 
 [11]
 See 7A Wright & Miller, Ibid., at 234:
 "There are some exceptions to the notice requirement that should be noted. As was stated earlier, the primary concern of the court under Rule 23(e) is to assure that any person whose rights would be affected by a dismissal or compromise has the opportunity to contest the proposed action."
 See, also, Pearson v. Ecological Science Corp. (5th Cir. 1975) 522 F.2d 171, 176-7, Cert. denied sub nom. Skydell v. Ecological Science Corp., 425 U.S. 912, 96 S.Ct. 1508, 47 L.Ed.2d 762 (1976):
 "The special prophylactic function that subdivision (e) of Rule 23 was designed for is to 'assure that any person whose rights would be affected by a dismissal or compromise has the opportunity to contest the proposed action.' "
 
 
 [12]
 Wheeler, Predismissal Notice and Statutes of Limitations in Federal Class Actions After American Pipe and Construction Co. v. Utah, 48 S.Cal.L.Rev. 771, 775, n. 16a (1975)
 
 
 [13]
 See, Comment, Continuation and Representation of Class Actions Following Dismissal of the Class Representative, 1974 Duke L.J. 573, 596:
 " * * * During the period between the filing and certification, a class action is supported solely by the pleadings, which may or may not have a foundation in fact compatible with the requirements of rule 23(a) and (b). Since the class has not yet been found to exist by the court, it is merely thought or assumed to exist hypothetically for the limited purpose of enabling the plaintiff to prove its actual existence."
 In support of that statement, the editors include a note (i. e., n. 100) with cited authorities, in which this statement is made:
 " * * * Prior to certification, the class is only a denominated or putative class rather than an independent entity before the court."
 
 
 [14]
 Satterwhite v. City of Greenville, Tex., supra, 557 F.2d at 425 (Gee, J., dissenting)
 
 
 [15]
 1974 Duke L.J., supra, at 599:
 " * * * It follows then that the issuance of a 23(c)(1) certification provides a primary line of demarcation between those actions which can continue to exist after the dismissal of the individual representative and those which cannot."
 
 
 [16]
 See, also, Pasadena City Bd. of Education v. Spangler (1976) 427 U.S. 424, 430, 96 S.Ct. 2697, 49 L.Ed.2d 599; Weinstein v. Bradford (1975) 423 U.S. 147, 149, 96 S.Ct. 347, 46 L.Ed.2d 350; Indianapolis School Comm'rs v. Jacobs (1975) 420 U.S. 128, 129, 95 S.Ct. 848, 43 L.Ed.2d 74; Winokur v. Bell Federal Sav. & Loan Ass'n (7th Cir. 1977) 560 F.2d 271, 275-7, Rehearing denied 562 F.2d 1034, U. S. appeal pending
 
 
 [17]
 Weight Watchers of Phila. v. Weight Watchers Int. supra, 455 F.2d at 774-775; and this is so, even though the result may be to destroy class certification because the settlements will make it impossible for the plaintiff to meet the numerosity test for class certification, Nesenoff v. Muten (E.D.N.Y.1974) 67 F.R.D. 500, 503, n. 4; American Finance System, Incorporated v. Harlow (D.Md.1974) 65 F.R.D. 572, 575
 
 
 [18]
 See Girsh v. Jepson (3d Cir. 1975) 521 F.2d 153, 157
 
 
 [19]
 See, also, Young v. Higbee Co. (1945) 324 U.S. 204, 213, 65 S.Ct. 594, 599, 89 L.Ed. 890; Sheffield v. Itawamba County Board of Supervisors (5th Cir. 1971) 439 F.2d 35, 36; Miller v. Steinbach (S.D.N.Y.1967) 268 F.Supp. 255, 281; Rothman v. Gould (S.D.N.Y.1971) 52 F.R.D. 494, 496
 In Young, the Court said that parties "cannot avail themselves of the statutory privilege of litigating for the interest of a class and then shake off their self-assumed responsibilities to others by a simple announcement that henceforth they will trade in the rights of others for their own aggrandizement."
 In Rothman, the Court said:
 " * * * having nominated themselves as class representatives, both plaintiff and his counsel have undertaken responsibilities, and triggered possible consequences, that may not now be erased by routine acceptance of the resignation they now tender."
 
 
 [20]
 See, Greenfield v. Villager Industries, Inc. (3d Cir. 1973) 483 F.2d 824, 832:
 " * * * The ultimate responsibility (in an action begun as a class action) * * * is committed to the district court in whom, as the guardian of the rights of the absentees, is vested broad administrative, as well as adjudicative power."
 This is the reason that Rule 41(a), which, "(s)ubject to the provisions of Rule 23(e)," authorizes the parties without order of court to dismiss any action by "stipulation of dismissal signed by all parties who have appeared in the action," has been found inapplicable to any action begun as a class action whether under Rule 23 or 23.1 or 23.2. See Papilsky v. Berndt (2d Cir. 1972) 466 F.2d 251, 257, Cert. denied 409 U.S. 1077, 93 S.Ct. 689, 34 L.Ed.2d 665; Newberg, Ibid., § 4920 at p. 404. In short, the exception in 41(a), though stated in terms of 23(e) strictly, was manifestly intended to extend to any action begun as a representative action and the courts have merely given effect to this intention. Cf., Chrapliwy v. Uniroyal, Inc. (N.D.Ind.1976) 71 F.R.D. 461, 464. The appellant in this case apparently concurred in this construction of the pertinent exception in Rule 41(a) and has not rested its argument on that Rule.
 
 
 [21]
 See Peoples v. Wainwright (D.C.Fla.1971) 325 F.Supp. 402, 403; Levin v. Mississippi River Corporation (S.D.N.Y.1968) 289 F.Supp. 353, 363
 
 
 [22]
 These cases are listed in McArthur v. Southern Airways, Inc. (5th Cir. 1977) 556 F.2d 298 at 302-303, Rehearing en banc granted (569 F.2d 276), and Magana v. Platzer Shipyard, Inc., supra, 74 F.R.D. at 65. The contrary view is outlined in an article written by counsel for the appellant, titled Settling Rule 23 Class Actions at the Pre-certification Stage: Is Notice Required? and published in 56 N.C.L.Rev. 303 (1978). For additional criticism of reliance on 23(e), See, Wheeler, Predismissal Notice and Statutes of Limitations in Federal Class Actions After American Pipe and Construction Co. v. Utah, supra, 48 S.Cal.L.Rev. at 786-792
 
 
 [23]
 Wright & Miller, Ibid., § 1797 at p. 237
 
 
 [24]
 42 F.R.D. at 327
 
 
 [25]
 42 F.R.D. at 326
 
 
 [26]
 42 F.R.D. at 327
 
 
 [27]
 42 F.R.D. at 326
 
 
 [28]
 42 F.R.D. at 328
 
 
 [29]
 42 F.R.D. at 326
 
 
 [30]
 42 F.R.D. at 328
 
 
 [31]
 The only variation made by the cases in the rule as stated in Philadelphia Electric is the substitution of the word "treat," Kahan v. Rosenstiel (3d Cir. 1970) 424 F.2d 161, 169, Cert. denied sub. nom. Glen Alden Corp. v. Kahan, 398 U.S. 950, 90 S.Ct. 1870, 26 L.Ed.2d 290 and in others of "presume," 7A Wright & Miller, Ibid., § 1797 at p. 236, in lieu of "assume(d)."
 
 
 [3]
 Newberg, Class Actions, § 4920 at p. 404 (1977) states the rule:
 "The applicability of Rule 23(e) between the time the action is brought and the date of certification of the class has been raised in several cases. Courts have recognized that in order to effectuate the purpose of Rule 23(e), it must apply from the commencement of an action filed as a class action until such time as there is a ruling denying the class action."
 7A Wright & Miller, Federal Practice and Procedure, § 1797 at 236-7 (1972 ed.) puts the rule thus:
 "A practical problem exists involving the application of Rule 23(e) during the period between the filing of the action and the determination under subdivision (c)(1) of whether it can be maintained on a class basis. This problem was specifically dealt with by the district court in Philadelphia Electric Company v. Anaconda American Brass Company, * * * . The court held that during the interim between instituting the action and a decision under Rule 23(c)(1), the action must be presumed to be proper for purposes of subdivision (e). * * *
 "The court then went on to hold that its approval of the settlement had to be held in abeyance pending a determination of the class action question."
 
 
 [32]
 61 F.R.D. at 399. See, also, to same effect, Held v. Missouri Pacific Railroad Company (S.D.Tex.1974) 64 F.R.D. 346, 351; Beaver Associates v. Cannon (S.D.N.Y.1973) 59 F.R.D. 508, 510; Berger v. Purolator Products, Inc. (S.D.N.Y.1966) 41 F.R.D. 542, 543
 
 
 [33]
 See, note 10, Pearson v. Ecological Science Corp., 522 F.2d at 176-177
 
 
 [34]
 See 1974 Duke L.J., supra at 595-596:
 "Philadelphia Electric cannot be read to support the requirement of a 23(c) (1) hearing in every case. The court expressly limited its language so as to presume the validity of the class action only for restricted persons. The only reason a 23(c)(1) determination occurred in this case was that considerations of due process required notice to be given to members of the class under rule 23(e) because they would be bound by the consequences of the settlement. These due process considerations are absent where the dismissal of the action would not foreclose the class from seeking further relief. Therefore, a 23(c)(1) determination would not be an essential exercise in those situations." (Emphasis added)
 
 
 [35]
 See, Bantolina v. Aloha Motors, Inc. (D.Haw.1977) 75 F.R.D. 26, 33
 
 
 [36]
 See 89 Harv.L.Rev., supra, at 1541-1542:
 "Thus, while pre-certification dismissal does not legally bind absent class members, notice may be appropriate under some circumstances to afford absentees an opportunity to intervene and take over the class suit, or to file individual claims. The judge's authority to order notice in the pre-certification situation is clear; the only question is when he should do so."
 
 
 [37]
 Page 58
 
 
 [38]
 See 89 Harv.L.Rev. at 1542, n. 32
 
 
 [39]
 Magana v. Platzer Shipyard, Inc., supra, 74 F.R.D. at 67
 
 
 [40]
 Van Bronkhorst v. Safeco Corp. (9th Cir. 1976) 529 F.2d 943, 950
 
 
 [41]
 Eisen v. Carlisle & Jacquelin (2d Cir. 1973) 479 F.2d 1005, 1018, Vacated on other grounds, 417 U.S. 156, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974)
 
 
 [42]
 Ibid., at pp. 37-38
 
 
 [43]
 Wheeler, Ibid., (48 S.Cal.L.Rev. at 788) is of the opinion that the Philadelphia Electric principle always compels a certification determination. Professor Moore seems to be of the same opinion, since he denies any power to settle prior to the certification determination. See, n. 8. The Manual for Complex Litigation "argues that a true settlement never should be allowed prior to certification." § 1.46 (4th rev. 1977)
 
 
 [44]
 48 S.Cal.L.Rev., supra, at 797
 
 
 [45]
 Miller, Ibid., at p. 60
 
 
 [46]
 McGough and Lerach, Termination of Class Actions: The Judicial Role, 33 U.Pitt.L.Rev. 445, 457 (1972)
 
 
 [47]
 Miller, Ibid., at p. 10
 
 
 [48]
 Two contrary cases from the Eastern District of Wisconsin seems to assume that, by merely alleging a class action, it is to be assumed that a class action is "viable." Rotzenburg v. Neenah Jt. Sch. Dist., Winnebago, Cty., Wis. (E.D.Wis.1974) 64 F.R.D. 181, 182; Duncan v. Goodyear Tire and Rubber Company, supra (66 F.R.D. 615). In the first of these cases, the Court states that, "it is well settled that for purposes of Rule 23(e), a class action allegation warrants the assumption that the putative class is viable." (64 F.R.D at 182.) In making this assumption, the Court dismisses Sosna as irrelevant, see comments Supra. It would find support for its view in the language in Philadelphia Electric to the effect that, "(i)t is conceivable that enough information about the claimed class or classes could be supplied to support the formulation of an adequate notice under Rule 23(d)." (42 F.R.D. 328) This language, however, is inconsistent with the language in East Texas Motor Freight v. Rodriguez, supra, 431 U.S. 395, 97 S.Ct. 1891, 52 L.Ed. 453
 
 
 [49]
 Miller, Ibid. at 14
 
 
 [50]
 Miller, Ibid., p. 15. At p. 14 it was stated:
 "Because certification is so important in terms of the district judge educating himself and making some very crucial findings required by the Rule, the court should insist on a fully informative presentation. Thus, I am sympathetic toward the growing practice of insisting on some discovery relating to the propriety of class action treatment, particularly with regard to such issues as adequacy of representation, predominance of the common questions, and the superiority of the class action procedure."
 
 
 [51]
 Ibid. at p. 13
 
 
 [52]
 Note 50
 
 
 [53]
 This decision, it has been stated, "accords, however, with the recent Supreme Court decision in East Texas Motor Freight System, Inc. v. Rodriguez, which may sound the death knell for 'across-the-board' suits in discrimination cases. The Rodriguez Court held that to qualify as a class representative in discrimination cases, a plaintiff must be a member of the class he attempts to represent and 'possess the same interest and suffer the same injury' as other class members. Noting that the mere fact a complaint alleges discriminatory practices does not insure the named plaintiffs will adequately protect class interests, the Court stated that Rule 23 must be carefully applied in discrimination cases, and held that because the named plaintiffs had not personally suffered injuries as a result of the practices they sought to challenge, they were ineligible to represent a class of persons who did suffer injuries as a result of those practices." Fourth Circuit Review, 35 Wash. & Lee L.Rev. 433, 528-529 (1978)
 This same view of Rodriguez is taken by Younger and McElligott, Jr., Defending the Employer in Title VII Litigation, IV Va. Bar Assn. Journal, 4 at 6-7 (1978):
 "In the past, courts have almost routinely approved 'across-the-board' class actions on the theory that employment discrimination is, by its nature, a class complaint. The United States Supreme Court in East Texas Motor Freight System, Inc. v. Rodriguez, has recently emphasized, however, that although Title VII suits are often class suits, 'careful attention to the requirements of Federal Rule 23 remains nonetheless indispensable.'
 "Before a case can be certified as a class action, a plaintiff must show that he is able adequately to represent a class of individuals who raise claims similar to his own and who are too numerous for joinder. The individual plaintiffs 'must be part of the class and . . . possess the same interest and suffer the same injury as the class members.' "
 Another comment which, though expressing disfavor with what appeared to be the thrust of Rodriguez, conceded that the case held that "(t)he class action could be brought only by persons 'possess(ing) the same interest and suffer(ing) the same injury' as the class members" and that the plaintiffs in that case had no right in their alleged class action "to mount a classwide attack" on a discrimination practice to which they had not personally been subjected, is Fischl, The Proper Scope of Representation in Title VII Class Actions: A Comment on East Texas Motor Freight System, Inc. v. Rodriguez, 13 Harv.Civ.Rights Civ.Liberties L.Rev. 175, 186 (1978). This comment also noted that Rodriguez raised another issue which it might be argued incorrectly in its judgment would bar the classwide suit:
 "The nonqualification argument can be viewed as raising the issue of plaintiffs' standing to sue on behalf of the class. See 431 U.S. at 403-04 (97 S.Ct. 1891) (citing, Inter alia Sosna v. Iowa, 419 U.S. 393 (95 S.Ct. 553, 42 L.Ed.2d 532) (1975) and Schlesinger v. Reservists Comm. to Stop the War, 418 U.S. 208 (94 S.Ct. 2925, 41 L.Ed.2d 706) (1974)). Under the constitutional doctrine of standing, an individual must be personally and actually aggrieved by the conduct decried in order to ensure the existence of the requisite 'case or controversy' which triggers jurisdiction in the federal courts." Ibid. at 185, n. 66.
 For a recent decision, accepting the interpretation of Rodriguez as putting up a road-block against the so-called "classwide" suit, See Miller v. Motorola, Inc. (N.D.Ill.1977) 76 F.R.D. 516, 518; Cf., however, Adams v. Jefferson Davis Parish School Bd. (W.D.La.1977) 76 F.R.D. 621, 623.
 
 
 [54]
 Both the plaintiff and the intervenor were hired, apparently on application. They make no claim that they were denied employment in any category for which they were qualified or for which they applied. The original plaintiff alleges that she was discharged and that her discharge was due to "her adamant refusal" to have "sexual relations" with her "immediate supervisor." To give a racial tone to this charge she averred that this was "traditional white male conduct toward black females." She does supplement this with a bare charge of "discriminatory supervision" and the claim that, on information, "other employees" had found their supervisor "to be hard on blacks, and to use racially derogatory terms." But she makes no allegation that she personally had been aggrieved by any misconduct other than that charged against her supervisor. There is no evidence how many employees were female and whether any other black female had experienced the problem with her supervisor as alleged by the plaintiff. Thus, on the present record, it is obscure whether her claim could satisfy either the numerosity or typicality test of Rule 23. Equally inconclusive is the claim of the intervenor. It would appear that he was discharged for failing to obey an order of his supervisor. He was replaced by a black employee. Any racial involvement in his discharge does not appear in his allegation of his final discharge. He does claim he was fired earlier "because a white person had been found to replace him." However, he continued to work at his job for almost a year thereafter
 
 
 [55]
 See, Magana v. Platzer Shipyard, Inc., supra, 74 F.R.D. at 67
 
 
 [56]
 74 F.R.D. at 69
 
 
 [57]
 Wheeler, Supra at 804-807 (48 S.Cal.L.Rev.)
 
 
 [58]
 48 S.Cal.L.Rev. at 804-805
 
 
 [59]
 74 F.R.D. at 70
 
 
 [60]
 See 74 F.R.D. at 70; Berse v. Berman (S.D.N.Y.1973) 60 F.R.D. 414-417; and Elias v. National Car Rental System, Inc., supra, 59 F.R.D. at 277, in all of which the court followed this practice
 
 
 [61]
 This is the rule advocated in the Harvard Study at 1544-1545. This rule has, also been suggested by the American College of Trial Lawyers, as the Harvard Study points out